**Betty J. JOHNSON, Petitioner,**

v.

**OFFICE OF SENATE FAIR EMPLOYMENT PRACTICES, Respondent.**

No. 94–6002.

United States Court of Appeals, Federal Circuit.

Sept. 16, 1994.

Rehearing Denied; Suggestion for Rehearing In Banc Declined Oct. 31, 1994.

Betty Jean Johnson, Pro Se.

Michael Davidson, Senate Legal Counsel, Washington, DC, submitted for respondent. With him on the brief were Ken U. Benjamin, Jr., Deputy Senate Legal Counsel, Morgan J. Frankel and Claire M. Sylvia, Asst. Senate Legal Counsel.

Before MAYER, PLAGER, and CLEVENGER, Circuit Judges.

MAYER, Circuit Judge.

Betty J. Johnson appeals the decision of the Senate Select Committee on Ethics affirming the order of a hearing board of the Office of Senate Fair Employment Practices in which the board determined that Johnson did not show that she had suffered employment discrimination on the basis of sex or religion. SFEP 92–006 (Oct. 26, 1993). We affirm.

## Background

■ We review for the first time a Senate employee's appeal of a discrimination complaint filed pursuant to the Government Employee Rights Act of 1991, Pub.L. No. 102–166, title III, 105 Stat. 1088, *codified as amended at* 2 U.S.C. § 1201, *et seq.* (Supp. V 1993). This Act gives Senate employees the right to an administrative adjudication and subsequent judicial review of employment discrimination claims.[1] It establishes a series of four steps which Senate employees must follow to challenge prohibited discriminatory practices.[2]

---

1. Prior to enactment of the Government Employee Rights Act of 1991, a Senate employee's only avenue for challenging employment discrimination was to bring a claim before the Senate Select Committee on Ethics via Senate Rule 42, which prohibits discrimination in Senate employment:

   No member, officer, or employee of the Senate shall, with respect to employment by the Senate or any officer thereof—
   (a) fail or refuse to hire an individual;
   (b) discharge an individual; or
   (c) *otherwise discriminate against* an individual with respect to promotion, compensation, or terms, conditions, or privileges of employment on the basis of such individual's race, color, religion, sex, national origin, age, or state of physical handicap.

2. Prohibited employment practices are enumerated at section 1202 of the Act:

   *All personnel actions affecting employees of the Senate shall be made free from any discrimination based on—*
   (1) race, color, religion, sex, or national origin, within the meaning of section 2000e–16 of Title 42;
   (2) age, within the meaning of section 633a of Title 29; or
   (3) handicap or disability, within the meaning of section 791 of Title 29 and sections 12112 to 12114 of Title 42.
   In addition, Title V of the Family and Medical Leave Act of 1993 provides that allegations of violations of that title may be addressed through

To initiate an action under the Act, an employee must request counseling in the Office of Senate Fair Employment Practices (OSFEP) (Step I). 2 U.S.C. § 1205. The request for counseling must be made within 180 days of the alleged violation and the period for counseling is 30 days unless the employee and the OSFEP agree to reduce the period. *Id.* Where the complainant is an employee of the Architect of the Capitol or a member of the Capitol Police, the Director of the OSFEP may refer the employee to the Architect of the Capitol or the Capitol Police Board for internal grievance procedures before the counseling period. *Id.*

Not later than 15 days after the end of the counseling period, the employee may file a request for mediation (Step II), in which the OSFEP, the employee, and the employing office meet separately or jointly in an effort to resolve the dispute. 2 U.S.C. § 1206. The mediation period lasts for 30 days and may be extended another 30 days at the discretion of the OSFEP. *Id.*

Not later than 30 days after the end of the mediation period, the employee may file a formal complaint with the OSFEP and request a hearing (Step III). 2 U.S.C. § 1207. An employee must have completed Steps I and II in order to file a complaint. Once a formal complaint is filed, the Director of the OSFEP convenes a hearing board comprised of three independent officers. *Id.* The hearing board must conduct a hearing no later than 30 days after the filing of the formal complaint, unless the OSFEP extends, with good cause, the time for conducting the hearing by an additional 60 days. *Id.* The procedures for conducting the hearing are set forth in section 1207.

Within 10 days of receiving the hearing board's decision, the employee or the employing agency may request the Senate Select Committee on Ethics to review the decision (Step IV).[3] 2 U.S.C. § 1208. The committee's review must be based on the record before the hearing board and the committee may remand, reverse, affirm or decline to review the hearing board's decision. *Id.*

After a party has requested review by the committee, and within 90 days of the entry of a final decision pursuant to section 1208(d)(2),[4] the party may petition for review by this court. 2 U.S.C. § 1209. Congress has crafted a very narrow standard of review of final decisions under the Act. This court may reverse a final decision only if it is determined that the decision was "(1) arbitrary, capricious, an abuse of discretion, or otherwise not consistent with law; (2) not made consistent with required procedures; or (3) unsupported by substantial evidence." 2 U.S.C. § 1209(c). We review Johnson's case with this standard firmly in mind.

Betty Johnson is an employee of the Architect of the Capitol, assigned to the Superintendent of the Senate Office Buildings. Since 1987, Johnson's job has been to supply cleaning materials to the custodial workers. In September of 1991, the Architect announced a job opening for the position of Custodial Worker Assistant Supervisor. The duties of the position included planning the work of the custodial workers, assigning tasks to subordinates, inspecting the work of custodial workers, and assisting in promotions and discipline. Johnson applied for the position along with ten other candidates.

---

the procedures established by the Government Employee Rights Act. 2 U.S.C. § 60m(b).

**3.** As originally enacted, the Act permitted an employee or an employing office to elect to appeal a hearing board decision directly to this court. The Act was amended in 1993 to require Ethics Committee review as a prerequisite to judicial review. However, the amendment does not apply to cases, such as this case, which were filed before the amendment. Johnson did, however, appeal her case to the committee before seeking review in this court.

**4.** Pursuant to section 1208(d)(2), if the committee does not remand, it must transmit a written decision to the OSFEP within 60 calendar days

during which the Senate is in session after the request for review is filed (this time period may be extended by 15 days). 2 U.S.C. § 1208(d)(2)(A). If the committee transmits a written decision to reverse, that decision is entered as the final decision. *Id.* If the committee does not vote to reverse or remand within the time period allowed, the decision of the hearing board is deemed to be a final decision. 2 U.S.C. § 1208(d)(2)(B). Alternatively, if the committee decides not to review, the decision of the hearing board is entered as the final decision. 2 U.S.C. § 1208(d)(2)(C).

The selection process was accomplished by a panel of six individuals designated by the Superintendent of the Senate Office Buildings. The panelists included Hilda Lyles, who was Johnson's supervisor, Calvin King, who was the assistant night superintendent, the night superintendent, and three custodial worker supervisors. Each applicant was asked the same five questions about the duties and responsibilities of the position. The panelists evaluated the applicants by assigning them scores on two worksheets.

Each applicant's score was totalled and provided to the Superintendent, who made the final selection based on the scores and various additional factors including equal employment opportunity guidelines and the overall fairness of the process. The Superintendent selected Clara Jackson, the person with the highest total score. Johnson's score was the lowest.

Johnson initiated proceedings under the Government Employee Rights Act, alleging that she was discriminated against on the basis of religion.[5] Specifically, she claimed that she was not selected for the position because she was not a Jehovah's Witness. Jackson was a Jehovah's Witness and three members of the Superintendent's office were Jehovah's Witnesses, including Calvin King, a member of the selection panel.

After a hearing at which both Johnson and the Architect introduced exhibits and called witnesses, the board determined that Johnson made out a prima facie case of discrimination because she was not a Jehovah's Witness, she was denied a position for which she was qualified, and the individual who was selected for the position was a Jehovah's Witness. However, the board also found that the Architect successfully rebutted Johnson's prima facie case by establishing a legitimate, nondiscriminatory reason for not selecting her—namely that Johnson was not the best qualified applicant. In addition, the board held that Johnson failed to establish that this proffered reason was a pretext.[6]

On appeal to the committee, Johnson, who was at that point represented by counsel, argued that the Architect's interview process "had a disparate impact in favor of Jehovah's Witnesses" and that the hearing board had not been provided with the panelists' completed evaluation forms before it reached its decision. The committee affirmed the hearing board. Johnson now appeals pro se.

*Discussion*

■ Johnson asserts several sources of error in the final decision. First, she argues that the panelists, including King and Lyles, should have been required to appear and testify before the hearing board regarding the evaluation sheets they completed for each candidate. In particular, Johnson claims that King could have testified that her evaluation sheets were incomplete because they did not identify the panelist making each evaluation.

Johnson says that King and Lyles were asked to appear at her hearing, the hearing was postponed when they did not appear, and the rescheduled hearing proceeded without them when they failed to appear for a second time. Taking this assertion as true, Johnson herself did not call any of these witnesses.[7] Nor did she object to their absence at the hearing. Because Johnson did not challenge the absence of these witnesses below, she is precluded from arguing this issue on appeal. *See Cecil v. Department of*

---

5. Johnson also raised allegations of wage discrimination on the basis of sex, stemming from the division of the night labor force into two groups: laborer-cleaners and custodial workers. Currently, all laborer-cleaners are male, while all custodial workers are female. Laborer-cleaners are compensated at a higher rate of pay and are eligible for overtime. The hearing board determined, and the committee affirmed, that Johnson had not made out a case of discrimination based on sex. Because Johnson has raised no challenges to this determination in her appeal here, we do not address the issue.

6. Johnson alleged a violation of section 717 of the Civil Rights Act of 1964, as applied to the

Senate by the Government Employee Rights Act of 1991. Accordingly, the hearing board applied the burdens of proof and persuasion as set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

7. A pre-hearing conference report compiled by the Presiding Hearing Officer and sent to both Johnson and the Architect shows that King and Lyles were scheduled as witnesses for the Architect. Neither of these individuals, nor any other panel member, appears on Johnson's list of witnesses.

*Transp.*, 767 F.2d 892, 894 (Fed.Cir.1985) ("It has been well established that petitioner is precluded from raising an issue in this court which could have been raised below but was not.").

Second, Johnson argues that the Architect failed to submit an exhibit which was requested by the hearing board during the hearing. Johnson claims that the board requested score sheets for all candidates showing the name of the panelist who completed each sheet. This version of events is not supported by the record. At the hearing, one board member asked whether Johnson had ever received "*her* evaluation criteria sheet with the numbers made out." (Emphasis added). The sheets evaluating the other applicants were never discussed. Because Johnson's individual sheets were submitted to the hearing board, we conclude that the Architect carried out the board's request.

■ Although Johnson now argues that the evaluation sheets should have identified the panelists by name, the record shows that during the discussion at the hearing, the board and the Architect's attorney agreed that Johnson's score sheets would be "sanitized" of the panelists' names. Johnson did not object to this procedure or ask to be provided with score sheets identifying the panelists. We cannot consider this belated request now.

■ Third, Johnson contends that the selection of Jackson was inappropriate because she worked in the same office as two members of the panel. This alleged "conflict of interest" is not a basis for challenging the final decision because it is not a discriminatory practice prohibited by the Government Employee Rights Act of 1991. It also was not raised before the board below.

■ Finally, Johnson simply points out that both King and Jackson were Jehovah's Witnesses. Taking this statement as a challenge to the merits of the decision that she was not discriminated against on the basis of religion, we reiterate that our scope of review of a final decision under the Act is very limited. Accordingly, we conclude that the record contains substantial evidence supporting the board's determination, as affirmed by the committee, that the Architect established a legitimate, nondiscriminatory basis for fail-

ing to select Johnson for the position of Assistant Supervisor—Johnson was indisputably the lowest scoring applicant while Jackson achieved the highest score.

In addition, the board noted that the only arguments asserted by Johnson that the Architect's stated reason was a pretext related to the alleged unfairness of the interview process. The board's finding that the interview process was fair is well supported by the fact that all applicants were subject to the same process—including questions about sick leave balances and the submission of a writing sample. Johnson has not shown that the final decision was arbitrary or capricious, an abuse of discretion, or was inconsistent with applicable law and procedures.

### Conclusion

Accordingly, the final decision of the Senate Select Committee on Ethics is affirmed.

*AFFIRMED.*