**OFFICE OF the SENATE SERGEANT AT ARMS, Petitioner,**

v.

**OFFICE OF SENATE FAIR EMPLOYMENT PRACTICES, Respondent.**

No. 95–6001.

United States Court of Appeals, Federal Circuit.

Sept. 10, 1996.

Jean M. Manning, Senate Chief Counsel for Employment, and Toby R. Hyman, Senate Assistant Counsel for Employment, Washington, DC, argued, for petitioner. With them on the brief were Timothy W. Millett, Carolyn M. Plump, Mary P. Donlevy, and Robert S. Whitman, Senate Assistant Counsels for Employment.

Steven F. Huefner, Assistant Senate Legal Counsel, Washington, DC, argued, for respondent. With him on the brief were Thomas B. Griffith, Senate Legal Counsel, Morgan J. Frankel, Deputy Senate Legal Counsel, and Monica P. Dolin, Assistant Senate Legal Counsel.

Before NEWMAN, LOURIE, and RADER, Circuit Judges.

LOURIE, Circuit Judge.

The Office of the Senate Sergeant at Arms ("SAA") appeals from the May 23, 1995 decision of the Senate Select Committee on Ethics affirming the decision of the Office of Senate Fair Employment Practices ("OSFEP") Independent Hearing Board. *Singer v. Office of the United States Senate Sergeant at Arms*, No. 94–010 (Office of the Senate Fair Employment Practices Feb. 9, 1995). The board found that the provisions of the Government Employee Rights Act ("GERA") required the SAA to provide William L. Singer with a retroactive accommodation for his alcoholism and depression disabilities. Because the board's decision

interpreting the relevant statutory provisions was in part contrary to law, we reverse-in-part, affirm-in-part, and remand.

## BACKGROUND

The United States Capital Police employed Singer as a dispatcher in its communications center. While his performance at work was excellent, he had attendance problems and frequently violated a "call-off" rule, requiring that officers who request unscheduled leave must do so at least one hour before their shifts are to begin. Between July 1991 and October 25, 1993, Singer failed to comply with the call-off rule fourteen times, and the SAA took action by issuing notices of discipline. During this time, his supervisors counseled him about his poor attendance, specifically inquiring whether drinking was the reason for his attendance problems. He denied that drinking was a factor and gave several other reasons, including domestic difficulties and depression. In June 1993, a psychologist conducted a fitness for duty examination of Singer, finding no indication of alcoholism and determining that he was fit for duty.

After receiving several notices of discipline, Singer was warned that if he received one more such notice, the SAA would recommend his removal. On October 28, 1993, Singer did receive another notice of discipline for again violating the call-off rule. Upon receiving this notice, Singer disclosed to his supervisor that he was an alcoholic and that it was alcoholism that caused him to have violated the call-off rule. He then voluntarily entered a rehabilitation program. The SAA nonetheless proposed his removal, but subsequently offered him a last-chance agreement. He attempted to negotiate for more favorable terms, but when the parties were unable to reach an agreement, the SAA imposed its own last-chance "agreement." * The last-chance agreement provided, *inter alia,* for Singer's participation in a substance dependency recovery program, but contained no provisions for retroactive relief. Singer then filed an employment discrimination complaint with the board.

The board found that Singer was a "qualified individual" with disabilities of alcoholism and depression as defined in the Americans with Disabilities Act ("ADA") and the Rehabilitation Act. The definitions in these acts are incorporated into the GERA. *See* 2 U.S.C § 1202(a) (1994) (GERA); 29 U.S.C. § 791 (1994) (Rehabilitation Act); 42 U.S.C. §§ 12112–14 (1994) (ADA). The board specifically found that the SAA had knowledge of Singer's alcoholism as of October 28, 1993, before it proposed the discipline of removal and imposed the last-chance agreement. It also found that a causal connection existed between Singer's alcoholism and his attendance problems. The board concluded that the SAA did not reasonably accommodate Singer's alcoholism disability, as it did not provide him with "a firm choice and a fresh start," meaning that he was entitled to a choice between treatment and discipline and that, if he chose treatment, prior discipline would be rescinded and all documentation of the discipline would be purged from his personnel file. The accommodation of a firm choice and fresh start thus provided Singer with, in effect, a retroactive accommodation.

The board also concluded that Singer was entitled to accommodation for depression. The board found, based on medical records and testimony, that Singer suffered from depression, having been diagnosed by a doctor in 1988, and having had that diagnosis later confirmed by two other doctors. In addition, another doctor who examined Singer during the course of the hearing likewise confirmed the diagnosis of depression. The board also found that the SAA was aware of Singer's depression since 1988 and knew, or should have known, that it continued. The board determined that a causal connection existed between Singer's depression and his misconduct, finding that depression prevented him from satisfying the requirements of the call-off rule or at least that it triggered episodes of drinking, which caused him to violate the call-off rule. The board thus concluded that Singer was entitled to a reasonable accommodation for depression.

---

* We note the incongruity between the imposition of the last-chance agreement and the common understanding that an agreement involves the consent of both parties.

Accordingly, the board imposed on Singer its own last-chance agreement, which provided him with the accommodation of a firm choice and fresh start. The fresh start was set forth in the board's order, as follows:

> All discipline imposed as a result of the five CP 535s [notices of discipline] shall be rescinded; Complainant shall be made whole for all wages and benefits lost as a result of the discipline imposed, including restoration of leave deducted; and his Official Personnel Record shall be purged of all documentation concerning the five (5) CP 535s, the resulting discipline, and the proceedings and recommendations of the June, 1994 DRB proceeding.

The board determined that the accommodation for Singer's alcoholism would adequately accommodate his depression. It thus granted the same relief for both alcoholism and depression. The SAA now appeals to this court, primarily arguing that it had no duty to provide Singer with a retroactive accommodation for his alcoholism or any accommodation for his depression. We have jurisdiction of this appeal under 2 U.S.C. § 1209 (1994).

### DISCUSSION

This case requires us to determine whether the GERA requires the employer to provide a *retroactive* accommodation consisting of a "firm choice and fresh start" for a qualified individual with a disability of alcoholism.

■ The GERA provides qualified individuals with administrative evaluation of their discrimination claims and judicial review of decisions concerning such claims. *Johnson v. Office of Senate Fair Employment Practices*, 35 F.3d 1566, 1567–68 (Fed.Cir.1994) (describing the procedures for Senate employees to challenge alleged discrimination). It is undisputed that Singer, as a Senate employee, was entitled to the rights granted by the GERA, which provides that:

> All personnel actions affecting employees of the Senate shall be made free from any discrimination based on—
>
> . . .

> (3) handicap or disability, within the meaning of section 791 of Title 29 and sections 12112 through 12114 of Title 42.

2 U.S.C. § 1202 (1994). The provisions of the Rehabilitation Act and the ADA incorporated into the GERA by the statutory references in subparagraph (3) above provide rights protecting qualified individuals who have a disability. *See* 42 U.S.C. § 12112(a) (1994) ("No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual. . . ."). The ADA defines the word "disability" as:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
>
> (B) a record of such an impairment; or
>
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2) (1994). The Rehabilitation Act contains a similar definition. *See* 29 U.S.C. § 706(8)(B) (1994).

A decision of the hearing board is deemed to be a final decision unless the Senate Select Committee on Ethics votes to reverse or remand. 2 U.S.C. § 1208(d)(2)(B) (1994). It did not do so here. We may set aside a final decision of the board if it was "(1) arbitrary, capricious, an abuse of discretion, or otherwise not consistent with law; (2) not made consistent with required procedures; or (3) unsupported by substantial evidence." *Id.* § 1209(c). As will be indicated hereinbelow, we conclude that the board's decision was in part inconsistent with law.

■ It is clear that Singer had a disability. As stated by the board, it is well-established that alcoholism meets the definition of a disability. *Crewe v. United States Office of Personnel Management*, 834 F.2d 140, 141–42 (8th Cir.1987); *Whitlock v. Donovan*, 598 F.Supp. 126, 129 n. 3 (D.D.C.1984), *aff'd*, *Whitlock v. Brock*, 790 F.2d 964 (D.C.Cir. 1986) (table). The ADA defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essen-

tial functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8) (1994). The board concluded that a sufficient causal connection existed between Singer's alcoholism and his job performance to qualify him as an individual with a disability. Singer's alcoholism clearly interfered with his ability to report for work, and it thus substantially limited his performance in his job, which was one of his major life activities. It was undisputed that Singer had competently performed his job; his shortcoming was not in his job performance as such, but, rather, in his inability to regularly report for work and to comply with the call-off rule. It was shown that Singer's alcoholism was under control throughout the course of his treatment, *i.e.*, when he was accommodated, and that with such treatment he was able to perform the essential functions of his job. Therefore, because the board's findings are supported by substantial evidence, it did not err in determining that Singer was a qualified individual with a disability of alcoholism.

The SAA argues that the board's requirement that Singer be given a firm choice and fresh start is contrary to law, in particular, section 104(c)(4) of the ADA, which reads as follows:

(c) Authority of covered entity

A covered entity—

. . .

(4) may hold an employee who engages in the illegal use of drugs or who is an alcoholic to the same qualification standards for employment or job performance and behavior that such entity holds other employees, even if any unsatisfactory performance or behavior is related to the drug use or alcoholism of such employee;

42 U.S.C. § 12114(c)(4) (1994). Under section 104(c)(4), according to the SAA, the ADA and the Rehabilitation Act permit an employer to hold a person with alcoholism to the same standards as other employees; it therefore asserts that the statute does not require a firm choice and fresh start. The SAA asserts that, if there were to be such a retroactive accommodation, employees whose past disciplinary violations are expunged would not be held to the same standard as others; rather, they would be treated more favorably than others, which is contrary to the provisions of section 104(c)(4). The SAA thus argues that its prospective accommodation for Singer's alcoholism disability, when Singer first disclosed it on October 28, 1993, satisfied the requirements of the statute.

The OSFEP responds that the SAA was required to provide Singer with an accommodation that includes both a firm choice and a fresh start. According to the OSFEP, such an accommodation has been recognized by several courts and by the Merit Systems Protection Board, and it is an inherent part of the ADA and the Rehabilitation Act. The OSFEP asserts that the SAA's interpretation of section 104(c)(4) is inconsistent with the purpose of the ADA. It interprets section 104(c)(4) to mean that, only after an employee has been given a firm choice and fresh start, may the employer then hold the employee to the same standards as it holds other employees.

■ A qualified individual with a disability is entitled under the GERA to be free from discrimination because of that disability. *See* 2 U.S.C. § 1202(a) (1994); 42 U.S.C. § 12112 (1994). The ADA sections incorporated into the GERA state that such discrimination includes failure to make reasonable accommodation:

(a) General rule

No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

(b) Construction

As used in subsection (a) of this section, the term "discriminate" includes—

. . .

(5)(A) not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee. . . .

42 U.S.C. § 12112 (1994). A qualified individual with a disability is thus entitled to a reasonable accommodation, absent any statutory qualification that may limit the employer's duty to provide such an accommodation.

We agree with the OSFEP and with Singer that provision of a "firm choice" between treatment and discipline is consistent with the statutory requirement of a reasonable accommodation of an individual with a disability. Treatment would seem to be essential to any accommodation for alcoholism. If an individual refuses treatment when offered, then discipline is appropriate. Singer was entitled to a reasonable accommodation consisting of a prospective opportunity to be rehabilitated. The SAA provided Singer with such an accommodation. It advanced him leave to obtain in-patient treatment, and it allowed him to perform his job on a restricted-duty status while he continued his recovery. The SAA's accommodation enabled Singer to perform the essential functions of his job and was thus in conformity with the requirements of the statute. The SAA's duty was only to provide a *reasonable* accommodation, not necessarily the best accommodation. *See* 42 U.S.C. § 12112(b)(5)(A) (1994); *see also* H.R. REP. No. 485(III), 101st Cong., 2d Sess. (1990), *reprinted in* 1990 U.S.C.C.A.N. 462 ("In the event there are two effective accommodations, the employer may choose the accommodation that is less expensive or easier for the employer to implement, as long as the selected accommodation provides meaningful equal employment opportunity for the applicant or employee.").

■ However, we agree with the SAA that the ADA, as incorporated into the GERA, does not require a retroactive accommodation for a disability, which is what is meant by a fresh start. The board's decision to the contrary was therefore inconsistent with law. The controlling statutory provision, section 104(c)(4), is within the ADA's section providing an employer with certain defenses to charges of discrimination in cases involving illegal use of drugs and alcohol. *See* H.R. REP. No. 485(II), 101st Cong., 2d Sess. (1990), *reprinted in* 1990 U.S.C.C.A.N. 360–64. The legislative history states that, under section 104(c)(4), "[e]mployers may . . . hold an employee who is an illegal user of drugs or an alcoholic to the same qualification standards required of all employees." *See* H.R. REP. No. 485(III), 101st Cong., 2d Sess. (1990), *reprinted in* 1990 U.S.C.C.A.N. 470. The language of section 104(c)(4), in the second use of the disjunctive "or," indicates that the same qualification standards may be used both for employment and for job performance and behavior during employment. Use of the permissive "may" in section 104(c)(4) means that employers are not required to hold alcoholic employees to the same qualifications standards as other employees, but are permitted to do so if they choose. The SAA did so choose; it required, as part of its standards defining performance and behavior, that its employees comply with the call-off rule. Under section 104(c)(4), the SAA was within its authority to require that Singer comply with that rule. The last clause of section 104(c)(4) reinforces this authority in that it allowed the SAA to hold Singer to that standard even though his unsatisfactory performance (failure to comply with the call-off rule) was caused by, and thus related to, alcoholism.

■ Furthermore, the ADA requires that a covered entity provide a reasonable accommodation for the *known* disability of a qualified individual. 42 U.S.C. § 12112(b)(5)(A) (1994). The entity's duty to accommodate arises only when it knows of a disability, and its duty is therefore prospective from the time when it gained knowledge of the disability. Requiring retroactive accommodation would mean that an entity would be required to accommodate an employee before it had knowledge of the disability, or when it only had partial, speculative, or hearsay knowledge. That would be contrary to the plain language of the statute, which indicates that an entity's duty to accommodate is triggered by its knowledge of the disability. It would also be contrary to the legislative history, which states that:

the legislation clearly states that employers are obligated to make reasonable accommodations only to the "known" physical or mental limitations of an otherwise qualified individual with a disability.

Thus, the duty to accommodate is generally triggered by a request from an applicant for employment or an employee.

H.R. REP. No. 485(II), 101st Cong., 2d Sess. (1990), *reprinted in* 1990 U.S.C.C.A.N. 347; *see also* H.R. REP. No. 485(III), 101st Cong., 2d Sess. (1990), *reprinted in* 1990 U.S.C.C.A.N. 462 ("The employee or applicant must request a reasonable accommodation; the employer is not liable for failing to provide an accommodation if it was not requested.").

■ When an employee has a disability, disclosure of the disability by the employee is thus a prerequisite to the employer's duty to make accommodation. We understand that, as noted by the board, denial can be a part of the disease of alcoholism. However, prompt disclosure is still in the best interests of both the employer and employee; it will more quickly provide rehabilitation and resolution of the matter. Moreover, and most relevant to this case, the statute provides that, until the employer is made aware of the disability, the duty to accommodate does not arise.

We are aware that two decisions of district courts have interpreted the ADA to require an accommodation which includes what amounts to a fresh start, *viz.*, expungement of records and forgiveness of past misconduct. *See Callicotte v. Carlucci*, 731 F.Supp. 1119, 1121–22 (D.D.C.1990); *Walker v. Weinberger*, 600 F.Supp. 757, 762 (D.D.C.1985). We have considered those decisions, but are not persuaded by them. We must follow our own interpretation of the relevant statutes, which we believe is more faithful to the totality of the legislation and the legislative history. Accordingly, we hold that the board's requirement that the SAA provide Singer with a retroactive accommodation including a fresh start before Singer requested accommodation for his disability was contrary to law.

■ The SAA argues that Singer's depression did not meet the definition of a disability within the meaning of the ADA and the Rehabilitation Act. According to the SAA, his depression did not limit one or more of his major life activities because, even though depressed, he was able to satisfactorily perform the duties of his job. In addition, the SAA asserts that it had no knowledge of Singer's depression and therefore no duty to accommodate it. The SAA distinguishes between clinical depression and what is apparently the more common and less serious depression akin to occasional sadness, arguing that Singer disclosed only the latter, if anything. The SAA also argues that Singer's depression was a product of his alcoholism and was thus not itself a separate condition requiring accommodation. The OSFEP responds that substantial evidence supports the board's findings that Singer suffered from a disabling depression and that the SAA knew of his depression and failed to accommodate it.

We agree with the OSFEP that the board's findings concerning the existence of Singer's depression are supported by substantial evidence. The board concluded that the relevant question is not whether the depression was clinical depression or only ordinary sadness but, rather, whether it was a physical or mental impairment that interfered with a major life activity. In 1988, a doctor diagnosed Singer as suffering from depression, and that diagnosis was later confirmed by three other doctors. If, as found by the board, Singer's depression triggered drinking episodes that in turn caused him to violate the call-off rule, then Singer's depression can be considered to have caused a substantial limitation of one of his major life activities and to meet the statutory definition of a "disability." Thus, even if Singer's depression was related to, and not inseparable from, his alcoholism, the board had substantial evidence to determine that his depression met the statutory definition of a "disability" and that he was entitled to an accommodation.

However, the board found that Singer did not seek accommodation for his depression until 1994, after the SAA imposed discipline on him. Thus, as with Singer's alcoholism, the SAA was not required to accommodate that disability before it knew of it. Since the board granted the same relief for both Singer's depression and alcoholism, its decision granting an accommodation for his depression was accordingly in error to the extent

that it included a retroactive accommodation consisting of a fresh start.

For the reasons indicated above, we reverse the decision of the board to the extent that it provided retroactive relief, *i.e.*, rescission of discipline imposed before October 28, 1993, including back pay, restoration of leave deducted, and expungement of documentation concerning the discipline from Singer's personnel records. We otherwise affirm the judgment and remand this case for removal of all retroactive relief granted by the board to be effective prior to October 28, 1993, the date when the SAA is chargeable with having been informed of Singer's disabilities.

## CONCLUSION

The board erred as a matter of law in determining that Singer was entitled to a fresh start, *i.e.*, a retroactive accommodation, for his alcoholism and depression disabilities. The board's decision is reversed to the extent that it required the SAA to provide Singer with retroactive accommodation; it is otherwise affirmed.

*REVERSED-IN-PART, AFFIRMED–IN–PART, AND REMANDED.*