# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

No. 96-1985

Annie Miners,                          *
                                       *
                Appellant,             *
                                       *  Appeal from the United States
        v.                             *  District Court for the
                                       *  District of Minnesota.
Cargill Communications, Inc.,          *
a Minnesota corporation,               *
                                       *
                Appellee.              *

Submitted: December 12, 1996

Filed:  May 9, 1997

Before BOWMAN and HEANEY, Circuit Judges, and STROM,[1] District
    Judge.

HEANEY, Circuit Judge.

Annie Miners appeals from a district court order granting
summary judgment to her former employer, Cargill Communications,
Inc. (Cargill) on her claim of employment discrimination under the
Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, and
dismissing without prejudice her claims under the Minnesota Human
Rights Act (MHRA), Minn. Stat. §§ 363.01-363.14, and for breach of
contract.  Miners claims Cargill fired her because it regarded her
as being an alcoholic.  Cargill responds that it fired Miners for

---

[1]The Honorable Lyle E. Strom, District Judge for the District
of Nebraska, sitting by designation.

violating a company policy that prohibited drinking and driving. In the alternative, Cargill claims that even if it regarded Miners

to be an alcoholic, its offer of treatment for that condition was an appropriate accommodation of her disability, the refusal of which justified her termination. We hold that summary judgment was improvidently granted and remand to the district court for further proceedings consistent with this opinion.

## I.

Miners worked as promotions director for REV 105, a radio station owned by Cargill. Her employment contract permitted Cargill to terminate Miners only if she failed to substantially perform her obligations under the contract or failed to adhere to company policy. Miners was responsible for organizing the radio station's promotional events, which were held primarily in nightclubs and bars. Cargill gave Miners a company van to drive in connection with those responsibilities.

During Miners' employment, Cargill maintained policies regarding employee consumption of alcohol. On May 2, 1995, the company issued a memorandum to all employees prohibiting consumption of alcoholic beverages while working at company events and announcing that violating the policy would be grounds for dismissal.[2] Cargill contends that it also disseminated an unwritten company policy prohibiting drinking alcohol and driving

---

[2]The memorandum stated, in part:

> If you are at a Company[-]sponsored event such as a remote broadcast and you are working at the event the use of alcohol is against company policy and is grounds for immediate termination.

(Appellant's App. at 42 (Miners Aff. Ex. B).)

3

company vehicles and that Miners learned of the policy at department-head meetings.  Cargill acknowledges, however, that

Miners could not attend all of the meetings at which Cargill claims to have disclosed the rule.

In May 1994, Mark Lang became Miners' supervisor. Lang had reason to be particularly sensitive to issues of drug or alcohol abuse because he had received treatment for chemical dependency in Florida in 1987 and again in Minneapolis in 1989 and remains enrolled in substance abuse rehabilitation programs.

A month prior to Lang's arrival, Miners failed to report to work one morning. She later explained to the station's management that she had been out drinking the night before. Management noted the incident by memorandum in her personnel file. Lang saw this entry after becoming Miners' supervisor.

A year later, REV 105 management became suspicious that Miners had been drinking prior to driving the company van. This suspicion prompted them to hire Dan Seman, a private investigator, to follow Miners. On June 6, 1995, Seman observed Miners drinking alcoholic beverages at several Minneapolis bars and then driving away in the company van. Again, on the evening of June 8, Seman observed Miners consuming alcohol at several bars with other Cargill employees and some of the station's advertising clients. Miners, who weighed approximately 250 pounds, admits that she drank five alcoholic beverages that night over the course of at least six hours, during which time she also consumed food.[3] After observing Miners drinking, Seman called Lang. Miners left the bar with a friend and proceeded to the parking ramp where the van was parked. Lang was waiting at the parking lot when Miners arrived and

---

[3]Miners presented expert testimony claiming that her blood-alcohol content under these circumstances was zero.

demanded the keys to the van.  Miners surrendered the keys and Lang drove away in the van.

The next day, Cargill's president, John Kuehne, informed Miners that her actions the previous night constituted grounds for termination. He offered her the opportunity to attend a chemical dependency treatment program "[d]ue to the possibility that [Miners] may be an alcoholic." (Appellant's App. at 21 (Kuehne Aff. ¶ 7).) He told Miners that she must either enter and complete the program with no loss in pay or job position or be fired. After considering her options for several days, Miners rejected the offer of treatment. Cargill immediately fired her. At no point did Miners admit to being an alcoholic.

Miners brought an action against Cargill claiming the company violated the ADA and sections of the Minnesota Human Rights Act by firing her because it regarded her as an alcoholic. Cargill alleged in its answer and by affidavits that it fired Miners because she broke a company rule by drinking before driving a company vehicle, thereby violating the terms of her contract. Miners asserts that Cargill's explanation for firing her is a pretext for its discriminatory motivation: its perception that she was an alcoholic. In support, Miners contends that she was never informed of the rule she purportedly violated, that other Cargill employees who were assigned company vehicles consumed alcohol before driving the vehicles and were not fired, and that Cargill's offer of treatment demonstrates that the management thought she was an alcoholic.

Cargill moved for summary judgment. The district court granted Cargill's motion for summary judgment on Miners' ADA claim, stating in substance that Cargill "gave an honest explanation" for

7

Miners' termination.[4]   In addition, the court noted that the private investigator's report "could, and did, lead to a fear of

[4]The court relied on <u>Krenik v. County of LeSeuer</u>, 47 F.3d 953, 960 (8th Cir. 1995), for the proposition that the court's "inquiry at this stage is limited to whether the employer gave an honest explanation of its behavior."

tort liability for Cargill."  Because of its decision with respect to the ADA claim, the court declined to exercise supplemental jurisdiction over Miners' state law claims and dismissed them without prejudice.  We reverse.

## II.

We review a grant of summary judgment de novo.  Crawford v. Runyon, 37 F.3d 1338, 1340 (8th Cir. 1994).  District courts may grant motions for summary judgment where "there is no genuine issue as to any material fact and [] the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Summary judgment is appropriate only where the evidence is such that no reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  Thus, the moving party must demonstrate that no genuine issues of material fact remain to be resolved.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  In determining whether the moving party is entitled to summary judgment, the court must resolve all controversies in favor of the non-moving party, take the non-movant's evidence as true, and draw all justifiable inferences in favor of that party.  Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  In opposing a motion for summary judgment, the non-movant may not rest on allegations or denials in its pleadings but must "set forth specific facts showing that there is a genuine issue for trial."  Anderson, 407 U.S. at 256.

In the employment discrimination context, a plaintiff must present a prima facie case to survive a defendant's motion for summary judgment.  To establish a prima facie case under the ADA, a plaintiff must show that she was a disabled person within the meaning of the ADA, that she was qualified to perform the essential

9

functions of the job, and that she suffered an adverse employment action under circumstances giving rise to an inference of unlawful

discrimination.  <u>Price v. S-B Power Tool</u>, 75 F.3d 362, 365 (8th Cir.), <u>cert. denied</u>, 117 S. Ct. 274 (1996).

Once a plaintiff has made out her prima facie case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions.  <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973).  The burden of production then shifts back to the plaintiff to demonstrate that the employer's proffered reason is a pretext for unlawful discrimination.  <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 507-08 (1993).  After the burden of production has shifted back to the plaintiff, the evidence produced to show a prima facie case and the "inferences drawn therefrom may be considered by the trier of fact on the issue of whether the [employer's] explanation is pretextual."  <u>Texas Dep't of Community Affairs v. Burdine</u>, 450 U.S. 248, 255 n.10 (1981).

Without deciding whether Miners presented a prima facie case of discrimination, the district court held that she had not produced evidence sufficient for a jury to find that Cargill's proffered reason for firing her was a pretext for unlawful discrimination.  In our view, Miners both presented a prima facie case under the ADA and offered sufficient evidence of pretext to survive summary judgment.

Miners made out a prima facie case of discrimination under ADA.  First, she introduced evidence sufficient to establish that Cargill regarded her as being an alcoholic, thus making her disabled within the meaning of the ADA.[5]  Cargill offered Miners

_____

[5]The ADA defines a disability as "a physical or mental impairment that substantially limits one or more major life activities . . . or being regarded as having such an impairment." 42 U.S.C. § 12102(2).  Although alcoholism qualifies as a

11

the choice between entering a chemical-abuse treatment program or being fired, and Lang was aware that Miners had missed a day of work as a result of her drinking on a previous evening. Second, Miners presented ample evidence from which a jury could conclude that she was qualified to perform the job for which Cargill hired her.[6] Third, Miners has offered evidence to support a jury finding that she suffered an adverse employment action from which an inference of unlawful discrimination arises.[7] In this case, the

disability for the purposes of the ADA, Crewe v. United States Office of Personnel Management, 834 F.2d 140, 141 (8th Cir. 1987), employers need not tolerate employees under the influence of alcohol in the workplace, 42 U.S.C. § 12114(c)(1),(2), and may hold an employee who is an alcoholic to the same standards of performance and behavior as non-alcoholics. 42 U.S.C. 114(c)(4).

[6]Although Cargill does not contest Miners' general qualifications or that she performed well in the position, it argues that Miners could not be "otherwise qualified" for the position because her conduct in operating a company vehicle after consuming alcohol was contrary to Cargill's interests. Although the ADA does not protect alcoholics or perceived alcoholics from the consequences of alcohol-related misconduct, to accept Cargill's sweeping argument would allow an employer's proffered reason for an unfavorable action toward an employee, pretextual or not, to prevent a plaintiff from presenting a prima facie case of discrimination in all but the most blatantly discriminatory cases under the ADA. An employer would merely need to offer evidence of any misconduct on the part of the plaintiff to destroy the plaintiff's job qualifications whether or not that misconduct prompted the adverse employment action.

[7]Cargill, citing Johnson v. Legal Services of Ark., Inc., 813 F.2d 893 (8th Cir. 1987), contends that Miners cannot show that her termination was surrounded by circumstances suggesting discrimination. Cargill points to this court's statement in Johnson that "inference[s] of discrimination [are] commonly raised in these cases by . . . showing that [the plaintiff] was treated less favorably than similarly situated employees who are not in [the] plaintiff's protected class." Id. at 896. Although the language cited indicates that disparate treatment commonly gives rise to an inference of discrimination, it cannot be the only means of demonstrating unlawful discrimination. If it were, employees

12

evidence Miners presents to establish that Cargill regarded her as disabled (e.g., treatment-or-discharge ultimatum) also creates an inference that her firing was motivated by unlawful discrimination.

We next turn to the fundamental question in this case: whether Miners presented sufficient evidence from which a jury could conclude that Cargill fired her because it regarded her as an alcoholic, not because she violated a company rule. Miners calls Cargill's proffered explanation into question in several respects. First, in contrast to Cargill's other alcohol policies, the rule Miners supposedly violated was never presented in written form and, according to Miners, never communicated to her. Moreover, accepting Miners' evidence as true, her blood-alcohol content would have been minimal at the time Lang confiscated her keys, and it is undisputed that Cargill made no attempt to determine whether Miners was under the influence. Finally, Miners casts doubt on Cargill's sincerity about enforcing the policy by presenting evidence that persons in management consumed alcohol prior to driving company vehicles without recourse by Cargill.[8]

_____

without similarly-situated peers would be without the protection of the ADA. Neither congressional mandate nor judicial precedent requires evidence of disparate impact to show discrimination under the ADA. See 42 U.S.C. § 12111 (no requirement that an employee must show disparate impact); McDonnell Douglas Corp., 411 U.S. at 802 n.13 (proof required to establish a prima facie case of discrimination will necessarily vary in different factual situations); Furnco Constr. Corp. v. Waters, 438 U.S. 567, 576 (1978) (prima facie case is shown where "one can infer . . . that it is more likely than not that such actions were `based on a discriminatory criterion illegal under [federal law].'").

[8]The district court refused to consider this evidence, concluding that those employees were not situated similarly to Miners because they were in managerial positions. The district court would be correct if the evidence were offered merely to show disparate impact to establish a prima facie case of discrimination. However, the evidence is proper to challenge Cargill's claim that it was motivated by concern about the tort liability associated

13

In addition, a jury could find that Miners' new supervisor was a firm believer in the value of treatment for chemical abuse and

_____

with employees operating company vehicles under the influence of alcohol.

that he saw Miners as being at particular risk, given the nature of her work.  Miners' evidence permits a finding that Cargill created the policy at issue to target Miners and expose what it regarded as her alcoholism.  Under these circumstances, a jury could reasonably find that Cargill was less interested in whether Miners was driving under the influence than in looking for a lever to force her into treatment for alcoholism.  Although the district court is correct in stating that Cargill would be justified in firing Miners if she were driving a company vehicle while under the influence of alcohol, see 42 U.S.C. § 12182(b)(3), in this case, the question whether Cargill actually believed Miners was doing so becomes a credibility issue to be determined by the factfinder.

Cargill alternatively argues that even if it perceived Miners to be an alcoholic, its offer of treatment was an appropriate accommodation of Miners' disability.  It cites Senate Sergeant at Arms v. Senate Fair Employment Practices, 95 F.3d 1102, 1107 (Fed. Cir. 1996), in support of its position that "[t]reatment would seem to be essential to any accommodation for alcoholism.  If an individual refuses treatment when offered, then discipline is appropriate."  This case is distinguishable.  In Senate Sergeant at Arms, the plaintiff conceded that he was an alcoholic and had a history of alcohol-related work problems, neither of which is present here.  See id. at 1104.  As the Federal Circuit points out, "the ADA requires that a covered entity provide a reasonable accommodation for the known disability of a qualified individual." Id. at 1107 (alteration in original) (citing 42 U.S.C. § 12112(b)(5)(A)).  Without actual knowledge that Miners was an alcoholic, Cargill cannot now argue that it attempted to accommodate Miners, and it certainly lacks a basis to claim that Miners' refusal of treatment warranted her termination.  Had Cargill acted on its perception that Miners suffered from

15

alcoholism by attempting to establish that she was an alcoholic[9] and demonstrated performance problems related to her alcoholism, it might have been able to avail itself of the opportunity to accommodate Miners' disability. Cargill asserts that disallowing it to require an employee to undergo treatment under these circumstances places it between a rock and a hard place by forcing it to choose between facing tort liability for an employee's alcohol-related misconduct and defending against allegations of employment discrimination. However, allowing an employer to require an employee it only suspects of being an alcoholic to enter treatment places the employee between the Scylla of entering an unnecessary chemical treatment program, with all of the associated personal costs and its stigmas, and the Charybdis of losing her job. Under these circumstances, Cargill's claim of accommodation lacks merit.

## III. CONCLUSION

Miners has established a prima facie case under the ADA and presented evidence from which a reasonable jury could conclude that Cargill's proffered reason for firing her was a pretext for unlawful discrimination. Moreover, Cargill's treatment-or-termination offer was not an accommodation where Cargill made no attempt to confirm whether Miners was an alcoholic. Therefore, summary judgment was improper. Likewise, the district court erred in dismissing Miners' claims under the MHRA. We reverse the

---

[9]Miners asserts that she would have been willing to undergo a medical or other appropriate form of evaluation to determine whether she was an alcoholic. (Appellant's App. at 39 (Miners Aff. ¶ 9).)

16

district court and remand for proceedings consistent with this opinion.

A true copy.

Attest.

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.