139 F.Supp.2d 1120 (2001)
Abe Brian EVANS, Plaintiff,
v.
SIEGEL-ROBERT, INC. d/b/a Plastene Supply Company, Defendant.
No. 1:99CV54 RWS.
United States District Court, E.D. Missouri, Southeastern Division.
April 16, 2001.
*1121 Doris Gregory Black, Peggy Hardge-Harris, Hardge-Harris Law Office, St. Louis, MO, for Plaintiff.
Abe Brian Evans, Marston, MO, Pro se.
Barry J. Klinckhardt, Siegel-Robert, Inc., St. Louis, MO, for Defendant.

MEMORANDUM AND ORDER
SIPPEL, District Judge.
Plaintiff Abe Brian Evans claims his employer, Siegel-Robert, Inc. d/b/a Plastene Supply Company (Plastene), fired him because of his race. Plastene denies that allegation and asserts that it fired Evans because he was not adequately performing the duties required of him and because Evans falsified documentation which he was required to complete as part of his duties. Because Evans has not presented evidence sufficient to raise a genuine issue of material fact regarding Plastene's proffered reason for his termination, judgment will be entered in Plastene's favor on all claims against it.

Facts
When considering a motion for summary judgment, the Court must view all facts in *1122 the light most favorable to the non-moving party; here, the plaintiff. Fed.R.Civ.P. 56(c). See generally, Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Viewed in that light, the facts before the Court are as follows.
Plastene employed Evans at its Portageville, Missouri plant as a maintenance worker. Evans' employment began on April 1, 1996 and continued until his involuntary termination on April 20, 1998. Plastene is a division of Seigel-Robert, Inc. Plastene manufactures and supplies painted electroplated plastic parts to the automotive and other industries.
The painting and electroplating manufacturing processes performed at Plastene require a constant supply of water. If the plant runs out of water, the plant must shut down. Plastene receives its water supply from the City of Portageville. Plastene also maintains a storage tank filled with water at the plant. The purpose of the tank is to provide a temporary supply of water to Plastene in the event there is an interruption in the supply of water from the City of Portageville. If such an interruption occurs, a regulatory valve is activated that causes the plant to stop drawing water from the pipeline coming from the city and to begin drawing water directly from the water storage tank. Once the plant begins to start drawing water from the storage tank, it takes approximately three to four hours for the water storage tank to empty. When the storage tank is running low, an alarm is supposed to be activated. When activated, the alarm sounds in Plastene's Human Resource Department.
Adjacent to the water storage tank, is a water pump house that houses the valves and gauges used to regulate and monitor the water flow from the City of Portageville and the level of water in the storage tank. Each of these gauges is individually numbered. Gauge 1 monitors the flow of water from the City of Portageville and Gauge 5 monitors the water level in the water storage tank.
One of Evans' daily job duties was to go to the water pump house and check the readings on the gauges to ensure that there was no problem with the plant's water supply. As part of his job duties, Evans was required to record the gauge readings on a "Work Order-Preventive Maintenance" form which he then turned in to his supervisor by 8:00 a.m. each day. Evans' daily responsibilities also included recording the daily water usage for the plant. This required Evans to read another gauge in the water pump house and record the water usage for the previous 24 hours at the plant on a "Daily Water Usage" chart.
On April 16, 1998, at approximately 8:00 a.m., the low water level alarm sounded in the Human Resource Department. Barry Little, the Human Resource Manager at Plastene contacted Evans' supervisor, Gary Mercer. Mercer was the Maintenance Supervisor. By the time Mercer was notified, the plant had already run out of water in the storage tank.
Mercer in turn contacted Bill Sullivan, a leadman for the Maintenance Department. Sullivan went to the pump house and noticed immediately that Gauge 1, which was the gauge monitoring the flow of water from the City of Portageville had been shut off. This meant the plant was not receiving any water from the City of Portageville. Gauge 5, which monitored the storage tank, indicated that the storage tank was empty.
Sullivan and Mercer investigated the situation and determined that the motorized *1123 control valve regulating the flow of water from the City of Portageville had malfunctioned. As a result of the malfunction, delivery of water from Portageville had been discontinued. When the water from Portageville was cut off, the plant began to draw water from the storage tank. The plant continued to draw water from the storage tank until the storage tank ran dry. Sullivan and Mercer manually opened the motorized valve regulating the flow of water from Portageville. Opening the valve restored the City of Portageville's water supply to the plant.
After reconnecting the plant's water supply, Mercer checked the Work Order-Preventive Maintenance form filled out by Evans for the day. That form indicated that Evans had read both Gauge 1 and Gauge 5 at 7:00 a.m. Evans noted them to be within normal ranges. Mercer did not believe this to be possible because the storage tank was empty at 8:00 a.m. Mercer reasoned that the plant must have started drawing water from the storage tank no later than 5:00 a.m. Based on these calculations, Mercer concluded that Gauges 1 and 5 would have reflected the abnormal situation at 7:00 a.m. when Evans claimed to have read them. Mercer then checked the Daily Water Usage log. The Daily Water Usage log indicated that Evans had already filled out the amount of water used for the next day, April 17, 1998. Mercer concluded that Evans had in fact, falsified the forms.
Mercer reported his conclusion to Little and showed him the forms Evans had completed. Mercer and Little spoke to Evans. Evans denied falsifying the forms. To ensure that the gauges had been in proper working order when Evans claimed to have read them, Mercer had them checked by the City of Portageville. That investigation revealed that the gauges were working normally.
This was not the first time that Evans had been disciplined for either failing to perform his daily maintenance checks or for falsifying documents. On December 1, 1997, Mercer reprimanded Evans for failing to document the daily gauge checks. On December 16, 1997, Mercer reprimanded Evans for failing to do his daily checks on December 13 and 14, 1997, and for falsifying documents on December 15, 1997. On January 19, 1998 Evans was reprimanded again for failing to perform his daily checks and falsifying another maintenance report form.[1]
The January 1998 reprimand related to a form that required Evans to make sure adequate supplies were in a plater machine repair box and to complete a checklist confirming that the box was in fact fully stocked. If Evans found supplies missing from the plater machine repair box, it was Evans' responsibility to get the supplies and restock the box. Evans claims his plater box was full and that Mercer told Little that the plater box was full, but Little disciplined Evans anyway.
After the April 16, 1998 incident, Mercer recommended to Little that Evans be terminated. Although Mercer recommended termination, Little was solely responsible for the decision to terminate Evans. Little terminated Evans on April 20, 1998.
Evans filed a Charge with the EEOC and the Missouri Commission on Human *1124 Rights and received a Right to Sue Letter. Evans then filed this action. Evans' complaint contains six counts. Count I alleges discriminatory discharge in violation of Title VII, 42 U.S.C. § 2000e et seq. Count II alleges discriminatory discharge in violation of the Missouri Human Rights Act, Mo.Rev.Stat. § 213.010 et seq. (MHRA). Count V alleges discriminatory discharge in violation of 42 U.S.C. § 1981. Counts III, IV and VI all allege retaliation based on race. Evans indicated in his response to Plastene's motion for summary judgment his intent to withdraw those claims.[2] Therefore only the claims in Counts I, II and V remain.

Standard of Review
When considering a motion for summary judgment, the Court must determine whether the record, when viewed in the light most favorable to the non-moving party, shows any genuine issue of material fact. Fed.R.Civ.P. 56(c). See generally, Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record, which it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323, 106 S.Ct. 2548. There is, however, no express or implied requirement in Rule 56 that the moving party must support its motion with affidavits or other materials negating the opponent's claim. Id. The burden is not on the moving party to produce evidence showing the absence of a genuine issue of material fact, even with respect to an issue on which the nonmoving party bears the burden of proof. Id. at 325, 106 S.Ct. 2548. Instead, "the burden on the moving party may be discharged by `showing'  that is, pointing out to the district court  that there is an absence of evidence to support the nonmoving party's case." Id. As long as the record before the court demonstrates that there is no genuine issue of material fact, summary judgment should be granted. Id. at 323, 106 S.Ct. 2548.
When faced with a motion for summary judgment meeting the standard set forth above, the non-moving party may not rest upon the mere allegations or denials of its pleadings alone, but must introduce affidavits, depositions, answers to interrogatories, or admissions on file designating specific facts showing that there is a genuine issue of material fact for trial. Celotex, 477 U.S. at 324, 106 S.Ct. 2548; Jetton v. McDonnell Douglas, Corp., 121 F.3d 423, 427 (8th Cir.1997); Noll v. Petrovsky, 828 F.2d 461, 462 (8th Cir.1987). Further, a plaintiff facing a motion for summary judgment must designate specific facts showing a genuine issue of material fact on each essential element of his claim. Id.

Legal Analysis
As stated above, Evans alleges that he was discriminatorily terminated because of his race in violation of Title VII and 42 U.S.C. § 1981. Claims of race discrimination under Title VII, the Missouri Human Rights Act, and 42 U.S.C. § 1981 are all determined using the same analysis. See Kim v. Nash Finch Co., 123 F.3d 1046, 1055 (8th Cir.1997); Finley v. Empiregas, Inc., 975 F.2d 467, 473 (8th Cir.1992);. Therefore, the Court will analyze Evans' Title VII, MHRA, and § 1981 claims together[3].
*1125 Evans does not present any evidence which could be considered direct evidence of employment discrimination[4]. In the absence of direct evidence of employment discrimination, the Court employs the burden shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).
Under the burden shifting analysis, the burden of persuasion always remains with the plaintiff, but the burden of proof shifts. McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. 1817. Plaintiff must first establish a prima facie case of intentional discrimination. Id. If the plaintiff establishes a prima facie case, the burden of proof shifts to the defendant employer to articulate a legitimate, non-discriminatory reason for the employment action. Id. Finally, the burden shifts back to the plaintiff to show the proffered reasons are pretextual. Id.
The elements of a prima facie case of wrongful termination based on race are: 1) membership in a protected class; 2) qualification for a position; 3) termination; and 4) circumstances that raise an inference of wrongful termination. Winbush v. State of Iowa, by Greenwood State Hosp., 66 F.3d 1471, 1482 (8th Cir.1995). Plastene argues that Evans has not established a prima facie case because he cannot show that he was qualified for the job or that he was terminated under circumstances raising an inference of discrimination. Plastene argues Evans was not qualified because he did not meet the company's legitimate expectations with regard to Evan's job duties.
Case law in the Eighth Circuit is split regarding the proper stage at which to consider performance deficiencies. In Mathews v. Trilogy Communications, Inc., 143 F.3d 1160, 1164 (8th Cir.1998), the Eighth Circuit cited its earlier holding in Miners v. Cargill Communications, Inc., 113 F.3d 820 (8th Cir.1997) where the Court held that the proffered reason for termination should only be considered at the pretext stage, not when determining whether a prima facie case has been made. Id. The Court held that to decide otherwise would allow an employer to defeat all but the most blatantly discriminatory action by asserting performance deficiencies whether they are pretextual or not. Id. In Whitley v. Peer Review Systems, Inc., 221 F.3d 1053, 1055 (8th Cir.2000), a panel of the Court held that in order to establish qualification for his position the plaintiff must show not only his ability to perform the job duties but also that he was performing those duties at a level that met his employer's legitimate expectations.
Whether Evans' alleged performance deficiencies are considered at the prima facie stage or the pretext stage of the analysis, the documented deficiencies, including three disciplinary actions for failure to accurately read the water meters and/or falsification of those readings entitle *1126 Plastene to summary judgment on Evans' race discrimination claims.
Assuming Evans has made a prima facie case, the burden of proof now shifts to Plastene to proffer a legitimate non-discriminatory reason for Evans' termination. Plastene says that Evans was terminated for his meter reading deficiencies and falsification of documents reflecting those meter readings. This is a legitimate non-discriminatory reason for termination.
The burden now shifts back to Evans to show that Plastene's articulated reason is false and that discrimination was the real reason. Christopher v. Adam's Mark Hotels, 137 F.3d 1069, 1073 (8th Cir.1998). However, any factual assertion that the reason was false will not automatically defeat summary judgment. Id. A trial judge may determine on a motion for summary judgment that the evidence is insufficient for a reasonable trier of fact to infer discriminatory intent even when the plaintiff has created a factual dispute regarding the employer's motivation. Id. The ultimate question is not whether plaintiff has presented factual evidence to support his claim of discriminatory motivation, but "whether the evidence is sufficient to create a genuine issue of fact as to whether the employer intentionally discriminated against the plaintiff because of the plaintiff's [race]." Rothmeier v. Investment Advisers, Inc., 85 F.3d 1328, 1337 (8th Cir.1995).
Evans' evidence of discriminatory motivation consists of an allegation that a similarly situated white employee was treated differently than he was when the white employee failed to read the water meter. Evans also asserts that Little regularly called black workers into the office and disciplined them more harshly than whites were disciplined.
These allegations are not sufficient to create a genuine issue of material fact regarding whether Evans was fired because of his race for the following reasons.
Evans' argument that similarly situated white employees were treated differently than he was fails because Evans was not similarly situated to the white employee he identifies. In support of this claim Evans points specifically to Greg Tucker who was designated to perform Evans' meter reading duties when Evans was on vacation. Evans alleges that records show that Tucker failed to read the meters as required on April 12, 1998 but that Tucker was not fired for that failure.
A plaintiff can establish circumstances raising an inference of discrimination by presenting evidence of similarly situated employees outside his protected class who were not discharged. Williams v. Ford Motor Company, 14 F.3d 1305, 1308 (8th Cir.1994)(citing Jones v. Frank, 973 F.2d 673, 676 (8th Cir.1992)). The employees must be similarly situated in all relevant respects Ward v. Procter & Gamble Paper Products, 111 F.3d 558, 560 (8th Cir.1997). "Employees are similarly situated if they are involved in or accused of the same or similar conduct and are disciplined in different ways." Williams, 14 F.3d at 1308.
Evans and Tucker are not similarly situated for two reasons. First, while it is true that Tucker did not make a reading on April 12, 1998, this was not a failure to comply with Tucker's job duties because April 12, 1998 was Easter Sunday. The Plastene plant was closed on that day. Second, Evans had been disciplined on two occasions prior to the April 16, 1998 incident which resulted in his termination for failure to properly read the meters and/or falsifying those readings.[5] Tucker had not *1127 previously been disciplined for failing to read the meters.
Because Tucker and Evans were not similarly situated, differing treatment of them does not create a genuine issue of material fact regarding discriminatory intent. This allegation is not sufficient to carry Evans' burden to show pretext.
Evans' argument that blacks were disciplined more harshly than whites is also insufficient to establish a showing of pretext. In support of this argument, Evans points first to the fact that Little disciplined him because his plater had not been kept full and for falsifying documents. Evans argues that this is evidence of discrimination because Evans' immediate supervisor had told Little that Evans' plater was stocked, but Little disregarded the information. This allegation does not raise a genuine issue of discriminatory treatment because, although Evans may have felt Little did not treat him fairly, there is nothing to support Evans' conclusion that Little's actions were motivated by discriminatory animus or that he treated similarly situated white employees differently.
Evans next points to Little's treatment of two women, one black, one white, with tardiness problems. Evans asserts that the black woman was treated more harshly in that Little disciplined her for the tardiness but told the white employee that he would "take care of her tardiness." The only support Evans presents for this assertion is his conclusory statement in his affidavit attached to his Memorandum in Opposition. This argument fails to establish a genuine issue of discriminatory motive for the same reason Evans' assertions regarding Tucker failed; Evans fails to establish that the two women were similarly situated. It is not clear that the two women had identical work records prior to the tardiness at issue. Absent such a showing, the facts do not support a showing of discriminatory animus.
Evans next points to Bill Mercer's comment when Evans was called to Little's office for the last time on April 16, 1998. That comment was "Boy, you just can't stay out of the office, can you." Evans asserts that Mercer's reference to him as "boy" reflects discriminatory animus. The context in which the word "boy" was used in reference to Evans is critical to any analysis. It is not clear to the Court whether the use of the word "boy" in the context of Mercer's statement reflects a discriminatory animus. Regardless, the term was used by Mercer who was not the decisionmaker in this case. The term is therefore, an isolated stray remark by a nondecisionmaker. Statements and actions by nondecisionmakers are insufficient as a matter of law to support a reasonable inference of pretext. Floyd v. State of Missouri, 188 F.3d 932, 937-38 (8th Cir. 1999). Mercer's comments standing alone are, therefore, insufficient to support an inference of pretext.
Finally, Evans points to the actions of Ervin Cliff, another supervisor at Plastene who allegedly gave Evans and another black employee all of the hard work. There is nothing in the record indicating *1128 that Cliff had any input into the decision to fire Evans. The Court finds no reason to distinguish Cliff's work assignments from the general category of statements made by nondecisionmakers. His actions, therefore, do not create a genuine issue of material fact regarding whether Little fired Evans due to discriminatory animus.
Evans has failed to carry his burden to show that Plastene's proffered reason for Evans' termination is pretext. His Title VII, MHRA and § 1981 claims, therefore fail.
Accordingly,
IT IS HEREBY ORDERED that summary judgment is entered in favor of defendant on all remaining counts against it.
An appropriate Judgment shall be filed separately herewith.

JUDGMENT
IT HEREBY ORDERED, ADJUDGED and DECREED that summary judgment is granted in favor of defendant on all remaining claims against it. All claims in plaintiff's Complaint are hereby dismissed with prejudice.
NOTES
[1] Evans admitted that he had been disciplined on these occasions in his deposition. In response to Plastene's motion for summary judgment, he submitted an affidavit contradicting his deposition testimony. Evans' affidavit does not explain the change in Evans' testimony. Absent an explanation for the change in testimony, affidavits changing prior testimony can not be used to create a genuine issue of material fact. Wilson v. Westinghouse Elec. Co., 838 F.2d 286, 289 (8th Cir.1988). Therefore, the Court will use Evans' deposition testimony in its factual determination.
[2] "Plaintiff is not pursuing his retaliation claims under Counts III, IV and VI, but believes that the remaining counts are sustainable."
[3] Plastene argues strenuously that Evans can not bring a § 1981 claim because he was an at-will employee. The Eighth Circuit has not yet decided whether at-will employees are able to bring a § 1981 claim. Opinions of the Eastern District of Missouri are split. This Court has previously held that at-will employees may not bring a § 1981 claim. Nofles v. State Farm Mutual Automobile Insurance Co., 101 F.Supp.2d 805 (E.D.Mo.2000). It is not necessary for the Court to reach that determination in this case because even if Evans was able to bring a § 1981 claim as an at-will employee, his claim does not survive summary judgment analysis on the merits.
[4] A plaintiff in a race discrimination case can proceed under two alternative theories. First, the plaintiff can present facts demonstrating that race was a motivating factor in the employment decision. Stacks v. Southwestern Bell Yellow Pages, 996 F.2d 200, 202 (8th Cir.1993). In order to do so, the plaintiff must present direct or circumstantial evidence "showing a specific link between discriminatory animus and the challenged decision," "sufficient to support a finding that an illegitimate criterion actually motivated the challenged decision." Philipp v. ANR Freight System, Inc., 61 F.3d 669, 673 (8th Cir.1995) citing, Stacks v. Southwestern Bell Yellow Pages, Inc., 996 F.2d 200, 201 n. 1 (8th Cir. 1993).
[5] In an attempt to show that he was similarly situated to Tucker, Evans attaches to his Memorandum in Opposition to Plastene's Motion for Summary Judgment his own affidavit denying that he was ever disciplined with regard to meter readings. This affidavit conflicts however with Evan's deposition testimony wherein he admitted to being disciplined. A party should not be allowed to create issues of credibility by contradicting his own earlier testimony. Wilson v. Westinghouse Elec. Corp., 838 F.2d 286, 289 (8th Cir.1988). "Ambiguities and even conflicts in a deponent's testimony are generally matters for the jury to sort out, but a district court may grant summary judgment where a party's sudden and unexplained revision of testimony creates an issue of fact where none existed before." Id.