# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-2850

_____

Steven Nuzum, Sr.,

    Plaintiff - Appellant,

v.

Ozark Automotive Distributors, Inc.,
doing business as O'Reilly Auto Parts,

    Defendant - Appellee.

\*
\*
\*
\*
\*   Appeal from the United States
\*   District Court for the Southern
\*   District of Iowa.
\*
\*
\*
\*

_____

Submitted: March 18, 2005
Filed: December 27, 2005

_____

Before WOLLMAN, JOHN R. GIBSON, and COLLOTON, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

    The question in this case is whether Steven Nuzum, Sr., has an impairment that substantially limits a major life activity, thus entitling him to the protections of the Americans with Disabilities Act, known as the "ADA," 42 U.S.C. § 12101-12213. Nuzum appeals from the district court's [1] entry of summary judgment against him on his ADA claim against his former employer, Ozark Automobile Distributors, Inc., which does business under the name "O'Reilly Auto Parts." We hold that Nuzum

---

[2]The Honorable James E. Gritzner, United States District Judge for the Southern District of Iowa.

failed to show his impairment--tendinitis of his left elbow--resulted in a substantial limitation on any major life activity; accordingly, we affirm the judgment of the district court.

## I.

Nuzum worked for Ozark as an order-picker, collecting auto parts from a warehouse to be distributed to retail stores and manually loading "totes" full of parts onto a conveyor belt. His job required him to lift as much as 60 pounds at a time. He hurt his elbow while lifting a heavy auto starter at work on about May 1, 2000. The pain continued, and on June 8, 2000 he visited a doctor, who diagnosed him with tendinitis. The doctor sent him to physical therapy and told him to avoid lifting, pushing, or pulling more than fifteen pounds with his left hand, which is his dominant hand. Over the next two years, he pursued medical treatment and remedies, and his condition fluctuated. As his injury waxed and waned, he asked for modification of his duties at work and received temporary assignments that did not require him to lift as much as usual.

On April 2, 2002, Nuzum's doctor pronounced him recovered to the maximum extent that could be expected. The doctor issued permanent medical restrictions: Nuzum was limited to lifting ten pounds constantly, twenty pounds frequently, and forty pounds occasionally. At Nuzum's deposition he described his impairment as follows:

> Right now, I still don't mow the lawn. To push a lawn mower I cannot do. Some household chores can be too strenuous to be lifting certain items. Even a basketful of laundry can hurt. . . . I don't do it.
> . . . .
> Well, there's some things I don't do as much of, and that's just the normal little things I've always done, work on my car and my sons' cars.
> . . .

I've been [coaching baseball, football, and basketball] for about 11 or 12 years, coaching year-round, and I don't think the past couple years I've been as effective as a coach because I've been unable to have any hands-on and demonstrate certain abilities of things that the kids need to know, because I can't throw a baseball like I used to, I can't throw a football, I can't shoot a basketball like I used to.

. . .

Like I miss, hugging my wife is different, can't pull her as tight, and so there's things that have changed, yeah.

The doctor who conducted an independent medical examination of Nuzum recounted that Nuzum's sleep was disturbed by rolling onto his elbow while asleep; Nuzum reported sleeping about two and a half hours at a time, for a total of four to five hours' sleep per night.

Nuzum and Ozark agree that the order picker job required Nuzum to lift up to sixty pounds and was therefore not within his now-restricted capabilities. Because Nuzum was not expected to improve, Ozark was no longer willing to allow Nuzum to do the modified jobs it had offered him while he was convalescing. Ozark offered him a part-time security guard position at a lower pay rate, which Nuzum declined. Ozark eventually offered Nuzum three choices: voluntary resignation, application for twelve weeks of Family and Medical Leave Act leave, or two weeks' time to look for work within Ozark compatible with his restrictions. Nuzum chose the latter option, but he was not able to find another job at Ozark within two weeks. At the end of the period, Ozark terminated his employment.

Nuzum brought this action under the ADA and the Iowa Civil Rights Act, Iowa Code § 216, alleging that he was disabled and that Ozark had failed to accommodate his disability. The district court entered summary judgment against him. Nuzum v. Ozark Auto. Distrib., Inc., 320 F. Supp. 2d 852 (S.D. Iowa 2004).

II.

Summary judgment should be entered only if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. F. R. Civ. P. 56(c). We review de novo the district court's entry of summary judgment. Brunko v. Mercy Hosp., 260 F.3d 939, 941 (8th Cir. 2001).

Title I of the ADA[2] prohibits discrimination by a covered employer "against a qualified individual with a disability because of the disability." 42 U.S.C. § 12112(a) (2000). An employer can discriminate by failing to make reasonable accommodation to the known limitations of an employee, 42 U.S.C. § 12112(b)(5)(A), which is the kind of discrimination Nuzum alleges. An individual does not prove that he or she has a disability simply by showing an impairment that makes it impossible to do his or her particular job without accommodation. See, e.g., Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 201 (2002). Rather, establishing "disability" is a significant hurdle that can prevent a person who was denied a job because of an impairment from being covered by the ADA. E.g., Sutton v. United Air Lines, Inc., 527 U.S. 471, 476, 494 (1999) (employer refused to offer plaintiffs jobs because of myopia, yet plaintiffs were not "disabled"); Shipley v. City of Univ. City, 195 F.3d 1020, 1023 (8th Cir. 1999) (plaintiff not disabled although impairments prevented him from being able to perform former job as firefighter).

The principal meaning of "disability" consists of two parts: the individual must have (1) "a physical or mental impairment" that (2) "substantially limits one or more

---

[2]Disability claims under the Iowa Civil Rights Act are analyzed in accordance with the ADA. Brunko, 260 F.3d at 941.

major life activities" of the individual. 42 U.S.C. § 12102(2).[3] In this case, there is no doubt that Nuzum suffers from a physical impairment. The disputed questions are (1) whether the impairment has affected a major life activity and (2) whether that effect is a "substantial limitation." § 12102(2)(A).

A.

"Major life activity" has proven to be an elusive concept that has engendered a good deal of litigation. The EEOC definition[4] includes a disparate range of activities from the elemental to the complex: "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i) (2002). The EEOC definition includes some of the most

---

[3]There are two auxiliary meanings of disability that are based on the principal meaning: a person can also be disabled by having a record of disability within the principal meaning or by being regarded as disabled within the principal meaning. 42 U.S.C. § 12102(2)(B) & (C).

[4]There are two possible sources of regulatory interpretation of the ADA. Williams, 534 U.S. at 193. First, there are regulations interpreting the Rehabilitation Act of 1973. Of these, the regulations adopted by the Department of Health, Education, and Welfare receive a high degree of deference because that department was entrusted with enforcing § 504 of the Rehabilitation Act and because Congress directed that the ADA be interpreted in light of Rehabilitation Act standards. Williams, 534 U.S. at 194-95; Fenney v. Dakota, Minn. & E. R.R., 327 F.3d 707, 713 (8th Cir. 2003). Second, there are the regulations interpreting the ADA. The EEOC has not been given authority to define the term "disability," but has nevertheless done so and its definition has been widely cited. See id. However, the level of deference to be accorded the EEOC regulations is still unsettled. See Epps v. City of Pine Lawn, 353 F.3d 588, 592 n. 4 (8th Cir. 2003). The EEOC's definition of "major life activities" regulation is identical to the Rehabilitation Act regulations adopted by HEW (now the Department of Health and Human Services), 45 C.F.R. § 84.3(j)(2)(ii). Since no one challenges the reasonableness of the EEOC regulations in this case, we need not decide whether they should receive deference.

elemental bodily, motor, and mental functions, such as breathing, seeing, and learning. At the middle level of complexity, the EEOC definition of "major life activity" includes some tasks that require the ability to perform a set of basic motor functions, such as "caring for oneself," which might include walking to the bathtub, lifting oneself into the water, reaching to wash one's hair, etc. Finally, at the high end of complexity, the EEOC definition includes "major life activities" that require the ability to do entire sets of middle-level tasks. For instance, "working" includes the ability to do the component tasks of "a class of jobs or a broad range of jobs in various classes." Fjellestad v. Pizza Hut of America, Inc., 188 F.3d 944, 949 (8th Cir. 1999); 29 C.F.R. § 1630.2(j)(3)(i). Similarly, in Williams, the Supreme Court interpreted the major life activity of "performing manual tasks" to include ability to do a particular set of middle-level tasks, to wit, the "variety of tasks central to most people's daily lives." 534 U.S. at 200.

The Supreme Court has interpreted "major" as meaning of "comparative importance," Bragdon v. Abbott, 524 U.S. 624, 638 (1998); see also Williams, 534 U.S. at 197, so that inability to do an activity of little importance cannot establish disability.

Nuzum lists a number of household chores and recreational activities that he cannot do or cannot do as well, as much, or as long as he used to. In light of Williams, we regard the ability to perform "manual tasks" as encompassing the ability to perform a particular set of tasks--"the variety of tasks central to most people's daily lives," 534 U.S. at 200, rather than considering each individual task as a discrete major life activity. Thus, we ask not whether Nuzum can work on his car or mow his lawn, as he argues he cannot, but whether his overall ability to do the manual tasks central to most people's lives is substantially limited. See Philip v. Ford Motor Co., 328 F.3d 1020, 1025 (8th Cir. 2003) ("The type of evidence most relevant to establishing a substantial limitation in the major life activity of performing manual tasks, includes, for example, an individual's ability to do household chores, bathe, brush one's teeth,

-6-

prepare meals, do laundry, etc."). Whether the individual can work on cars is one small part of a big inquiry that asks what manual tasks most people do and what manual tasks the ADA plaintiff can do. Even though throwing is recreational rather than a "task," we have grouped limits on recreational activities together with limits on home or personal maintenance activities involving a similar degree of importance in daily life for purposes of the Williams analysis. See Philip, 328 F.3d at 1025 (taking into account whether plaintiff could mow grass, barbeque, and work out on treadmill, among other things). But cf. Weber v. Strippit, Inc., 186 F.3d 907, 914 (8th Cir. 1999) (holding that shoveling snow, gardening, mowing the lawn, playing tennis, fishing, and hiking are not major life activities).

Nuzum argues that his injury affected the major life activity of working. Although working is listed as a major life activity in the EEOC and Rehabilitation Act regulations, 29 C.F.R. § 1630.2(i); 45 C.F.R. § 84.3(j)(2)(ii), the Supreme Court has reserved judgment on the question of whether working is properly considered a major life activity, Williams, 534 U.S. at 200; Knutson v. AG Processing, Inc., 394 F.3d 1047, 1050-51 (8th Cir. 2005). However, our Circuit has considered it so. Webner, 267 F.3d at 834; Fjellestad, 188 F.3d at 949.

Nuzum is subject to a permanent medical restriction on lifting, with a forty-pound maximum. Our Circuit has recognized the basic motor function of "lifting" as a major life activity. See Wood v. Crown Redi-Mix, Inc., 339 F.3d 682, 684 n.2 (8th Cir. 2003); Webner v. Titan Dist., Inc., 267 F.3d 828, 834 (8th Cir. 2001); Fjellestad v. Pizza Hut of America, Inc., 188 F.3d 944, 948 (8th Cir. 1999). Yet, in cases in which plaintiffs have established restrictions on lifting, we have said flatly that restrictions on lifting will not be enough to establish disability. For instance, in Mellon v. Fed. Express Corp., 239 F.3d 954, 957 (8th Cir. 2001), we said:

> It would thus appear that under prior rulings by this Court both the
> district court and this panel must reject, as a matter of law, the disability

claim of Ms. Mellon that is based on the premise that "she cannot lift more than 15 pounds and should avoid other such stresses with her right arm".

Accord Wenzel v. Missouri-Am. Water Co., 404 F.3d 1038, 1041 (8th Cir. 2005) ("A lifting restriction, without more, is not a disability."); Conant v. City of Hibbing, 271 F.3d 782, 785 (8th Cir. 2001) (per curiam) ("This court has repeatedly held that the type of work restriction at issue in this case [no lifting more than 30 pounds and no repeated bending or squatting] does not amount to a 'disability' within the meaning of the ADA."); Brunko v. Mercy Hosp., 260 F.3d 939, 941 (8th Cir. 2001) ("Although lifting itself is identified as a major life activity, this court has held that a general lifting restriction without more is insufficient to constitute a disability within the meaning of the ADA."); Snow v. Ridgeview Med. Ctr., 128 F.3d 1201, 1207 (8th Cir. 1997) ("While lifting is noted under the regulations as a major life activity, a general lifting restriction imposed by a physician, without more, is insufficient to constitute a disability within the meaning of the ADA."); see also Dropinski v. Douglas County, Neb., 298 F.3d 704, 707 n.2 (8th Cir. 2002) (stating that if the plaintiff proved only lifting restriction, it "might" not be enough to establish disability). In those cases, we did not consider whether a restriction on lifting a certain weight limited the plaintiff in comparison with an average member of the population, which is the method of analysis specified by the regulations for determining substantial limitation. See 29 C.F.R. § 1630.2(j)(1). Thus, we did not simply say that a such-and-such pound limit was too high to be a substantial limitation; rather, we said lifting limitations alone were not enough to establish disability. If no amount of limitation on an activity suffices to establish disability, then the activity is not a major life activity in its own right. We have said, however, that a substantial limitation of a constellation of such basic motor functions could suffice to prove disability. Dropinski, 298 F.3d at 707 n.2; Webner, 267 F.3d at 834. Therefore, rather than viewing lifting as a major life activity in its own right, it is more accurate to say that it is part of a set of basic motor functions that together represent a major life activity.

Not only have we required limitations on a set, rather than on individual basic motor functions, to satisfy the "substantial limitation" requirement, but we have recently applied the Williams standard to such functions. Williams itself held that to show a substantial limitation on the activity of performing "manual tasks," a plaintiff must show an effect on the particular tasks that are "central to most people's daily lives." 534 U.S. at 200. In our recent cases, we have held limitations on basic motor functions, such as sitting or standing, were not substantial because they did not meet the Williams standard, even though the functions at issue were neither "tasks," nor "manual," at least not in the sense of involving the hands. See Wood, 339 F.3d at 685; Philip v. Ford Motor Co., 328 F.3d 1020, 1025 (8th Cir. 2003); see generally Fenney v. Dakota, Minn. & E. R.R., 327 F.3d 707, 715 (8th Cir. 2003) (Williams test applies to all major life activities, not just manual tasks). For instance, in Philip, 328 F.3d at 1025, we rejected a claim that plaintiff was unable to grip, reach, lift, stand, sit, or walk because plaintiff failed to show how these limitations "impacted tasks central to most people's daily lives." Accord Wood, 339 F.3d at 685-86 (assessing substantiality of limit on standing, turning, lifting, and bending by asking which household tasks plaintiff could perform). As we explained in Philip:

> We recognize Williams dealt only with the proof necessary to establish a substantial limitation in the major life activity of performing manual tasks. Nevertheless, we find its premise equally applicable to Philip's claims involving the major life activities of gripping, reaching, lifting, standing, sitting and walking.

328 F.3d at 1025.

These cases interpreting Williams are similar to another line in which we have assessed a lifting restriction by determining whether it posed a substantial limitation on the major life activity of working. See Duty v. Norton-Alcoa Proppants, 293 F.3d 481, 491 (8th Cir. 2002) (lifting restriction together with various symptoms and testimony of vocational expert supported limitation on working); Webner, 267 F.3d

at 834 (assessing limitation on lifting by determining whether it prevented plaintiff from doing certain classifications of jobs); Brunko, 260 F.3d at 942 (holding that lifting restriction not a disability because it only precluded Brunko from performing a narrow range of jobs); see also Fjellestad, 188 F.3d at 949-51 (plaintiff argued she had limitations on basic function of sitting and on bathing, but court relied only on working).

Thus, although the motor functions listed in the EEOC definition are designated as major life activities in their own right, our cases show a finding of disability depends not on whether the plaintiff can perform every one of those functions, but on whether the net effect of the impairment is to prevent or severely restrict the plaintiff from doing the set of activities that are "of central importance to most people's daily lives," Williams, 534 U.S. at 198, or from working, see Webner, 267 F.3d at 834.

"Sleeping" is also recognized by some courts as a "major life activity," Colwell v. Suffolk County Police Dept., 158 F.3d 635, 643 (2d Cir. 1998) (sleep is "undoubtedly a major life activity"); Swanson v. Univ. of Cincinnati, 268 F.3d 307, 315 (6th Cir. 2001); Pack v. Kmart Corp., 166 F.3d 1300, 1305 (10th Cir. 1999); see also Heisler v. Metro. Council, 339 F.3d 622, 628 (8th Cir. 2003) (assuming sleep is major life activity), even though sleeping might be said to be the opposite of "activity." Cf. Bragdon v. Abbott, 524 U.S. 624, 658 n. 2 (1998) (Rehnquist, C.J., dissenting) ("Reproduction is not an activity at all, but a process.").

Nuzum's reliance on "hugging" as a major life activity could be analyzed in several ways. It could be analyzed as the motor function of squeezing. It could, albeit with some linguistic strain, be characterized as part of the ability to perform manual tasks. It could be characterized as part of the ability to engage in sexual relations, which the Ninth Circuit has recognized as a major life activity. See McAlindin v. County of San Diego, 192 F.3d 1226, 1234 (9th Cir. 1999), amended on denial of rehearing, 201 F.3d 1211 (9th Cir. 2000). We need not struggle with how to

characterize this activity because it cannot support Nuzum's ADA claim for the reasons discussed below at page 14.

## B.

Once a major life activity has been identified, the ADA plaintiff must show that his ability to perform the activity is "substantially limited" by the impairment. "Substantially limited" means limited "considerabl[y] or to a large degree." Williams, 534 U.S. at 196 (internal quotation marks omitted). The EEOC regulations define "substantially limited" as follows:

> (i) Unable to perform a major life activity that the average person in the general population can perform; or
> (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1). The EEOC regulations then instruct us to assess the substantiality of the limitation by examining the nature, severity, duration, and impact of the "impairment," § 1630.2(j)(2), thus diverting attention to some extent from the functional limitations to the individual's underlying physical or mental impairment.

As we have discussed, a limitation on lifting together with limitations on other basic motor functions may create a triable issue of disability if in the aggregate they prevent or severely restrict the plaintiff from doing the set of manual tasks that are "of central importance to most people's daily lives." Williams, 534 U.S. at 198. See Dropinski, 298 F.3d at 707 n.2.

The record here does not establish a substantial limitation in performing the set of tasks that are of central importance to most people's daily lives. The independent medical examiner who examined Nuzum wrote:

> Mr. Nuzum relates that he helps out around the house, doing laundry, dishes and picking up after the children. . . . However, he is limited at home because he is no longer able to mow the lawn. He states that he just sold his car the weekend prior to this evaluation because it had a manual transmission, and he could no longer manage the steering wheel and the manual transmission at the same time comfortably. He also is unable to do outside chores as he did before.

At his deposition, Nuzum was asked what he could not do. He responded:

> Right now, I still don't mow the lawn. To push a lawn mower I cannot do. Some household chores can be too strenuous to be lifting certain items. Even a basketful of laundry can hurt.

He also testified that he did not work on his and his sons' cars as much as he used to and that he could not throw a ball as well as he used to. The record shows that Nuzum can do many of the tasks that are of central importance to most people's daily lives, such as helping out around the house, doing dishes, tidying up, and doing laundry. His limitation on lifting heavy laundry baskets is only a moderate limitation. His testimony that he cannot work on cars or throw as well as he used to cannot suffice, because it only states the limitation relative to his own former ability, instead of comparing his existing abilities with those of the general population, as required by the regulations. § 1630.2(j)(1). Nuzum said he cannot mow at all, but lawn-mowing is not central to most people's daily lives. He contends that he cannot drive, but the record does not bear out that contention; it indicates only that he had trouble driving a manual transmission car, which is altogether different from not being able to drive at all. Driving a manual transmission car is not central to most people's daily lives.

Altogether, Nuzum has failed to show that his limitations on doing manual tasks are substantial. See Philip, 328 F.3d at 1025 (no evidence of substantial limitation where plaintiff could dress, groom and feed himself, work out on a treadmill, etc.); Taylor v. Nimock's Oil Co., 214 F.3d 957, 960 (8th Cir. 2000) (no substantial limitation where plaintiff had only moderately abridged abilities to do yard work, clean house, etc.).

Nuzum's argument that he is limited in working seems to rely entirely on the lifting limitation. Although it is well established that his lifting limitation is not substantial in its own right, since working is evaluated with reference to the individual's expertise, background, and job expectations, see Fjellestad, 188 F.3d at 949, and the requirements of the class of jobs for which the plaintiff is qualified, it may be possible for a lifting limitation to result in a substantial limitation on working. We said in Webner, 267 F.3d at 834, "While a lifting restriction standing alone is insufficient to demonstrate that [the plaintiff] was substantially limited in the life activity of working, the inability to lift heavy objects can translate across a broad spectrum of physically demanding jobs." Even if such a result is possible, it would depend on proof that the limitation forecloses the broad category of jobs for which Nuzum's background and skills otherwise would fit him. See Knutson v. AG Processing, Inc., 394 F.3d 1047, 1053-54 (8th Cir. 2005); City of Giordano v. New York, 274 F.3d 740, 750 (2d Cir. 2001). Nuzum has not attempted any such proof. To the contrary, the record shows that Nuzum got another job of roughly the same type that he had at Ozark. Ability to do another job of the same general class is inconsistent with a substantial limitation on the major life activity of working. Brunko, 260 F.3d at 942. Nuzum's new job pays less than did his job at Ozark, but this does not suffice to show that Nuzum was substantially limited in working. See Knutson, 394 F.3d at 1051 ("[W]orking does not mean working at a particular job of the person's choice.").

Nuzum also argues that he is substantially limited in the major life activity of sleeping. At the independent medical examination, Nuzum told the doctor that because of pain from his arm, his sleep was limited to two and a half hours at a time, for a total of four to five hours' sleep per night. It has been held as a matter of law that inability to sleep for more than five hours per night is not a substantial limitation on the major life activity of sleeping. Swanson 268 F.3d at 316. Assuming for the sake of argument that sleeping is a major life activity, Nuzum must show that his sleeping patterns are significantly different from the rest of the population's, Colwell, 158 F.3d at 644, and he has not done so.

Finally, the limitation on hugging, whether it is characterized as a motor function, a task, or as part of the ability to engage in sexual relations, does not appear to be substantial because Nuzum testified that he can still hug his wife, just not as tightly as he did before. In any case, we need not belabor the question of how much hugging limitation is substantial or whether hugging is a major life activity, because even if Nuzum were held to be disabled by virtue of the hugging limitation, it would not save his claim since he seeks an accommodation from his employer, which must be related to the limitation in question. Substantial limitation on reproduction may mean that a person is disabled, as in Bragdon v. Abbott, 524 U.S. at 638-39, where the plaintiff suffered from AIDS and therefore was substantially limited in her ability to engage in reproduction. In Bragdon, the plaintiff was seeking equal treatment in public accommodations--specifically, she wanted to have her dental work done at a dentist's office like everyone else, rather than in the hospital. Id. at 629. Unlike the Bragdon plaintiff, Nuzum seeks a workplace accommodation. The right to an accommodation in employment is a separate question from disability. This court has held that a workplace accommodation must be related to the limitation that rendered the person disabled:

> Where the reasonable accommodation requested is unrelated to the
> limitation, we do not believe an ADA action may lie. Put another way,

-14-

there must be a causal connection between the major life activity that is limited and the accommodation sought.

Wood v. Crown Redi-Mix, Inc., 339 F.3d 682, 687 (8th Cir. 2003). Any accommodation Nuzum seeks from Ozark is entirely unrelated to the limitation on his ability to hug.

## III.

Nuzum also argues that Ozark regarded him as being disabled, but his evidence consists only of the fact that Ozark failed to accommodate him by hiring him for another position. Because Nuzum was not disabled, he was not covered by the ADA and not entitled to accommodation. Because he was not entitled to accommodation, Ozark did not have to give him a different job that was consistent with his limitations. If we accepted Nuzum's argument that Ozark's failure to hire him for another position constituted proof that Ozark regarded him as disabled, we would be allowing an accommodation claim in by the back door when the plaintiff failed to prove he was disabled. We may not do so.

\*\*\*

Nuzum has not shown a substantial limitation on any major life activity, at least no such limitation that Ozark could accommodate at work. Therefore, he is not disabled under the ADA. We are not insensitive to the fact that Nuzum was hurt while working for Ozark, precisely because he was doing the hard physical labor that was part of his job there. He lost his job at Ozark because of that injury, and he is now working elsewhere at a lower pay rate. Nevertheless, under the ADA and the case law interpreting the ADA, he is not disabled. Ozark is therefore entitled to summary judgment. We affirm the judgment of the district court.

_____

-15-