# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-2829

_____

| | | |
|---|---|---|
| Steven A. Breitkreutz, | * | |
| | * | |
| Plaintiff - Appellant, | * | |
| | * | |
| Orville Hillis, | * | |
| | * | Appeal from the United States |
| Plaintiff, | * | District Court for the |
| | * | Northern District of Iowa. |
| v. | * | |
| | * | |
| Cambrex Charles City, Inc., | * | |
| formerly known as Salsbury | * | |
| Chemicals Inc., | * | |
| | * | |
| Defendant - Appellee. | * | |

_____

Submitted: February 17, 2006
Filed: May 15, 2006

_____

Before BYE, HEANEY, and MELLOY, Circuit Judges.

_____

BYE, Circuit Judge.

Steven A. Breitkreutz appeals the district court's[1] adverse grant of summary judgment on his Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101-12213, and Iowa Civil Rights Act (ICRA), Iowa Code Chapter 216, claims against Cambrex Charles City, Inc. (Cambrex).[2] We affirm.

I

As the non-moving party at the summary judgment stage, we recite the facts in the light most favorable to Breitkreutz. See Kincaid v. City of Omaha, 378 F.3d 799, 803 (8th Cir. 2004). In 1994, Breitkreutz began working at Cambrex's Charles City plant. Breitkreutz became a Reactor Operator in April 1995 and worked as such until his termination on July 31, 2002. In November 1999 he experienced back pain and was off work for nearly two weeks. In December 1999, Cambrex's company doctor examined Breitkreutz and released him to full duty on December 23, 1999, without restrictions. From then until his termination, Breitkreutz continued to experience incidents of back pain and was examined by numerous doctors.[3]

---

[1]The Honorable Edward J. McManus, United States District Judge for the Northern District of Iowa.

[2]"Disability claims under the ICRA are analyzed in accordance with federal standards." Brunko v. Mercy Hosp., 260 F.3d 939, 941 (8th Cir. 2001). The parties do not contest parallel treatment of the claims.

[3]These examinations include: On January 18, 2000, Dr. Gibbons released Breitkreutz to return to work without restrictions. On January 25, 2000, Dr. Royer released him to return to work on January 31, 2000. On June 12, 2000, Dr. Alexander released Breitkreutz to full duty on the condition he first visit the company doctor. On August 6, 2001, Dr. Bengston released him to work with a fifty pound lifting restriction. On August 27, 2001, Rich Green, M.S.P.T., concluded Breitkreutz could return to work at the medium-heavy physical demand level with a fifty pound lifting restriction. On June 4, 2002, Dr. Royer released Breitkreutz to work with existing conditions.

The series of doctor appointments immediately preceding Breitkreutz's termination began in October 2000. At such time, the company doctor, Dr. Royer, referred Breitkreutz to Dr. Bengston at the Mayo clinic. Dr. Bengston saw Breitkreutz on numerous occasions, his last visit occurring on August 6, 2001. On such occasion, Dr. Bengston reported Breitkreutz could return to work with a fifty pound lifting restriction. In response to Bengston's report, Cambrex then had Breitkreutz see two more doctors: Dr. Royer and Dr. Kirkle, an Occupational Medicine Specialist. Both agreed Breitkreutz could return to work. Dr. Kirkle suggested several additional restrictions regarding Breitkreutz's position. Those restrictions included he lift no more than fifty pounds on an occasional basis, twenty-five pounds on a frequent basis, he should not fill more than ten barrels with sand per shift, and he should not move barrels or buggies because they fall outside his weight restriction. Cambrex allowed Breitkreutz to return to work with numerous restrictions in place.[4]

On June 4, 2002, Paula Kruthoff, Cambrex's Manager of Human Resources, sent Breitkreutz a letter placing him on leave and stating Cambrex would be unable to continue to employ Breitkreutz with the restrictions in place, because with those restrictions he could not perform all the functions of his position. The letter gave Breitkreutz until July 31, 2002, to improve his strength or be terminated. On June 17, 2002, Paula Kruthoff clarified her previous letter by writing if a physician of Breitkreutz's choosing reduced or eliminated the working restrictions he could continue his employment with Cambrex. On July 31, 2002, Dr. Nelson wrote such a letter stating Breitkreutz could return to work with a permanent lifting restriction of

_____

[4]Those restrictions included: Generally a fifty pound restriction for lifting, pushing, or pulling; a twenty-five pound restriction for frequent lifting; no pushing or pulling buggies if force exceeds fifty pounds; no moving fiber drums if the force exceeds fifty pounds; no rolling or tipping full metal drums but moving them if the force does not exceed fifty pounds; no lifting manway covers over fifty pounds; no shoveling any material; no adjusting fork life tines; no restrictions on press frames if force does not exceed fifty pounds; and no restrictions on empty drums if force does not exceed fifty pounds.

seventy-five pounds on an occasional basis. However, the record shows the letter was not faxed from Dr. Nelson's office until August 1, 2002, and then only to an attorney handling the worker's compensation case—and it was not received by Cambrex until sometime thereafter. Having not received the letter by July 31, 2002, Cambrex terminated Breitkreutz on such date.

On March 24, 2003, Breitkreutz filed an action in federal court alleging Cambrex violated the ADA, the ICRA, and the Family Medical Leave Act.[5] He alleged he was capable of performing the essential duties of the Reactor Operator position but Cambrex nonetheless regarded him as disabled for the purposes of the ADA.

On January 3, 2005, Cambrex filed a motion for summary judgment on all claims. Cambrex argued it did not regard Breitkreutz as someone with an impairment substantially limiting a major life activity, but merely as someone who could not perform the essential functions of the particular job. On June 9, 2005, the district court granted Cambrex's motion for summary judgment. It concluded no question of material fact existed as to Breitkreutz's claim. Accordingly, the district court granted summary judgment on Breitkreutz's ADA and ICRA claims.

II

We review a district court's grant of summary judgment de novo. Kincaid, 378 F.3d at 803. The moving party is entitled to summary judgment only "if the record, viewed in a light most favorable to the non-moving party, contains no questions of material fact and demonstrates that the moving party is entitled to judgment as a matter of law." Id. The party moving for summary judgment has the burden of proof to show there is no genuine issue of material fact. See Celotex Corp. v. Catrett, 477

---

[5]Breitkreutz subsequently dismissed his Family Medical Leave Act claim.

U.S. 317, 323 (1986), Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666 (8th Cir. 1992).

III

The ADA prohibits employers from discriminating against qualified disabled employees based on the employee's disability. 42 U.S.C. § 12112(a); Sutton v. United Air Lines, Inc., 527 U.S. 471, 475 (1999). The ADA defines "disability" as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2)(A)-(C). In this case, Breitkreutz must show Cambrex mistakenly regarded him as having an impairment substantially limiting one or more major life activities, or mistakenly believed he had an actual, non-limiting impairment which substantially limited one or more major life activities. See Sutton, 527 U.S. at 489. He alleges Cambrex regarded him as substantially limited in the major life activities of working and lifting, and terminated him due to those misconceptions.

A

With regard to the activity of lifting, we have noted a restriction on lifting alone is not a major life limitation. See, e.g., Nuzum v. Ozark Auto. Distribs., Inc., 432 F.3d 839, 844-45 (8th Cir. 2005). "[R]ather than viewing lifting as a major life activity in its own right, it is more accurate to say that it is part of a set of basic motor functions that together represent a major life activity." Id. at 845. "[A] limitation on lifting together with limitations on other basic motor functions may create a triable issue of disability if in the aggregate they prevent or severely restrict the plaintiff from doing the set of manual tasks that are of central importance to most people's daily lives." Id. at 847 (citations omitted). Breitkreutz does not allege Cambrex perceived him as unable "to do the manual tasks central to most people's lives" where "[t]he

-5-

type of evidence most relevant to establishing a substantial limitation in the major life activity of performing manual tasks, includes, for example, an individual's ability to do household chores, bathe, brush one's teeth, prepare meals, do laundry, etc." Philip v. Ford Motor Co., 328 F.3d 1020, 1025 (8th Cir. 2003). Regarding an employee as having a limitation that is not itself a disability cannot constitute a perception of disability. See Conant v. City of Hibbing, 271 F.3d 782 (8th Cir. 2001).

B

Breitkreutz also argues Cambrex perceived him as disabled in the major life activity of working. See Nuzum, 432 F.3d at 844 (noting working is a major life activity). Breitkreutz claims this is shown by Cambrex refusing to allow him to work despite his being able to perform the essential functions of his job and because Cambrex placed additional restrictions on him beyond those recommended by doctors.

Initially, we note, finding a plaintiff is substantially limited in working "requires a showing that [his] overall employment opportunities are limited. Thus, the employer would have to regard [him] as limited in that capacity. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." Miller v. City of Springfield, 146 F.3d 612, 614-615 (8th Cir. 1998) (citations omitted). As we held in Nuzum, 432 F.3d at 848:

> While a lifting restriction standing alone is insufficient to demonstrate that [the plaintiff] was substantially limited in the life activity of working, the inability to lift heavy objects can translate across a broad spectrum of physically demanding jobs. Even if such a result is possible, it would depend on proof that the limitation forecloses the broad category of jobs for which [plaintiff's] background and skills otherwise would fit him. [Plaintiff] has not attempted any such proof.

Similarly, here, Breitkreutz has not attempted to show defendant viewed him as incapable of performing a broad category of jobs other than making the conclusory

-6-

allegation: "Having such restrictions would also prevent [plaintiff] from performing a broad class of occupations."

Additionally, "[t]he provision addressing perceived disabilities is intended to combat the effects of archaic attitudes, erroneous perceptions, and myths that work to the disadvantage of persons with or regarded as having disabilities." Brunko v. Mercy Hospital, 260 F.3d 939, 942 (8th Cir. 2001) (citation omitted). If a restriction is based upon the recommendations of physicians, then it is not based upon myths or stereotypes about the disabled and does not establish a perception of disability. See Brunko, 260 F.3d at 941-42. Breitkreutz argues Cambrex imposed more restrictions on him than the fifty pound lifting restriction the doctors advised. However, the record shows Dr. Kirkle recommended other restrictions such as he lift no more than twenty-five pounds on a frequent basis, he not fill more than ten barrels with sand per shift, and he should not move barrels or buggies because they fall outside his weight restriction. Cambrex imposed restrictions as to Breitkreutz's lifting, pushing, and pulling. The record indicates Cambrex took Dr. Kirkle's suggestion Breitkreutz not move buggies or barrels because they fell outside his weight restriction and applied such a limitation on pushing and pulling to all aspects of his position. Given Dr. Kirkle's recommendation as to the buggies and barrels, Cambrex's additional restrictions are insufficient here to create a genuine issue of material fact as to whether Cambrex perceived Breitkreutz as disabled.

IV

For the foregoing reasons, the district court's grant of summary judgment is affirmed.

HEANEY, Circuit Judge, dissenting.

I respectfully dissent. The district court completely ignored Breitkreutz's testimony, accepted without reservation or examination the testimony presented by

-7-

Cambrex, and failed to conduct the careful analysis required by the United States Supreme Court in Toyota Motors Manufacturing, Kentucky, Inc. v. Williams, 534 U.S. 184, 197-98 (2002) (requiring case-by-case determination of whether a disability exists under the ADA). Thus, its grant of summary judgment on behalf of the company cannot stand.

It is clear that the company regarded Breitkreutz as having an impairment that substantially limited his ability to engage in the major life activity of working. Breitkreutz was cleared to work as a Reactor Operator by several doctors, including Dr. Bergston of the Mayo Clinic, and Dr. Lynn Nelson, an orthopaedic surgeon, subject only to a 50- or 75-pound lifting restriction. Yet, the company imposed several significant additional restrictions on Breitkreutz that a jury could well determine prevented Breitkreutz from doing not only his own job but a broad class of jobs as well. The company's attorney, Anthony Hall, selected Dr. Nelson to evaluate Breitkreutz and to submit a report to the company. Dr. Nelson did not fax his report, dated July 31, 2002, until August 1, 2002, one day after the company would accept additional medical information regarding Breitkreutz's condition. Dr. Nelson's failure to fax the report in a timely manner cannot be held against Breitkreutz. Dr. Nelson's report must be considered in determining whether the company perceived Breitkreutz as disabled, and it is unclear from the record whether the district court in fact considered it. Dr. Nelson's report indicated no strength deficiency, and further stated that:

> 2) Mr. Breitkreutz'[s] work at [Cambrex] represented, at worst, a temporary [not permanent] aggravation of his underlying degenerative condition.
> . . .
> 5) Other than [the 75-pound] lifting restriction, I have no recommendation for further evaluation or treatment. Mr. Breitkreutz may well experience occasional flares of low back pain, which should be adequately managed with occasional use of over-the-counter medications, per label.

(App. at 98-99 (third bracketed section in original).)

Notwithstanding this report, which clearly indicated that Breitkreutz could perform the essential duties of his job, the company terminated him the very day Dr. Nelson's report is dated. Certainly a jury could determine that the company ignored the medical reports when it terminated Breitkreutz, and therefore also determine that the company, regardless of the medical reports, perceived Breitkreutz as disabled when it terminated him.

The majority states that since the company relied on information from physicians as a basis for terminating Breitkreutz, it did not perceive Breitkreutz to be disabled based on "myths, stereotypes or archaic attitudes." I agree with this general proposition, but not with its application here. If the company had relied on the medical information from the Mayo Clinic, Dr. Nelson, and others, it could not have perceived him as unable to perform the essential duties of his job. Rather, it would have permitted him to continue working as either a Reactor Operator or in another capacity within the Charles City facility.

As we pointed out in Webner v. Titan Distribution, Inc., 267 F.3d 828, 834 (8th Cir. 2001): "[A] lifting restriction standing alone is insufficient to demonstrate that [an employee is] substantially limited in the life activity of working, [but] the inability to lift heavy objects can translate across a broad spectrum of physically demanding jobs." Breitkreutz was terminated because of the company's misconception that his limitations prohibited him from performing any job in the organization, not because of the 50- or 75-pound lifting restriction that the medical reports indicated was required. It is for the jury to determine whether the work restrictions imposed by examining physicians substantially limited an employee's ability to work. The matter should be remanded to the district court with directions to permit the case to go to the jury pursuant to the decisions of the United States Supreme Court and this court.

————————————————