# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 05-3911/05-3923

_____

| | | |
|---|---|---|
| Daniel J. Didier, | * | |
| | * | |
| Appellant/Cross-Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Schwan Food Company; | * | |
| Schwan's Home Service, Inc., | * | |
| | * | Appeals from the United States |
| Appellees/Cross-Appellants. | * | District Court for the Western |
| _____ | | District of Arkansas. |
| | * | |
| American Association of Retired | * | |
| Person's; Disability Rights Center; | * | |
| National Employment Lawyers | * | |
| Association, | * | |
| | * | |
| Amici on Behalf of Appellant. | * | |

_____

Submitted: June 16, 2006
Filed: October 16, 2006

_____

Before ARNOLD and BEAM, Circuit Judges, and DOTY,[1] District Judge.

_____

BEAM, Circuit Judge.

_____

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota, sitting by designation.

Daniel Didier appeals the district court's[2] grant of summary judgment in favor of Schwan Food Company and Schwan's Home Service (Schwan's) in this disability discrimination case. Schwan's cross-appeals the district court's denial of its motion for bill of costs. We affirm.

## I.   BACKGROUND

At the summary judgment stage, we recite the facts in the light most favorable to Didier, the non-moving party. Breitkreutz v. Cambrex Charles City, Inc., 450 F.3d 780, 781 (8th Cir. 2006).

Didier began working for Schwan's in 1991 as a route sales manager, where his duties included selling and delivering frozen food products to customers' homes from a Schwan's route truck. In 1994, Didier, who is right-handed, injured his right wrist and arm when he fell from a customer's porch. He aggravated the injury in 1996, requiring surgery. After returning to work in 1997, Didier earned a promotion to sales manager of the Van Buren, Arkansas, depot. As sales manager, Didier hired and trained new employees–primarily route sales managers. While training this group, Didier was required to operate route trucks and to assist the trainees with their duties, including loading and unloading the trucks.

In September 2002, Didier suffered another setback related to the 1996 injury, requiring more surgery on his right hand and arm. Following surgery, Didier returned to his sales manager position, albeit with modified duties–he was not required to run a route truck or train new drivers. Didier remained on modified duty until June 9, 2003, when his physician cleared him to work with *no* restrictions. Nonetheless, Didier was not returned to his former sales manager position at this time, for reasons

_____

[2]The Honorable Robert T. Dawson, United States District Judge for the Western District of Arkansas.

unclear in the current record. Instead, on June 30, 2003, Schwan's offered Didier a position as route sales manager of the Van Buren, Arkansas, depot. Didier declined this offer, asserting that he could not perform the essential functions of the position due to his inability to maneuver Schwan's truck doors with his right arm.

At this point, Schwan's sent Didier for a functional capacity evaluation (FCE). Following the FCE and a follow-up appointment with his own doctor, Didier was restricted to carrying ten pounds or less, and also restricted from driving the route, due to the heaviness of the truck doors. Didier's physician opined that he had reached maximum medical improvement. Didier remained on light duty until November 2003, when Schwan's informed him that it could no longer provide light duty assignments, and that it would be terminating his employment effective January 1, 2004.

Didier brought this action, asserting claims under the Americans with Disabilities Act (ADA), and the Arkansas Civil Rights Act. Didier claimed that he was terminated due to his right arm disability,[3] and that Schwan's failed to provide him with a reasonable accommodation–another employee who could go along on routes to open and close the truck door. Didier contends that as sales manager, he would rarely have to run truck routes. Thus, it would not be difficult for Schwan's to provide his requested accommodation. Schwan's contends that being able to fully operate the route truck, at times alone, is an essential function of the sales manager job which his medical restrictions prevent him from performing. Schwan's also argues that Didier is not actually disabled.

---

[3]Didier claims only that he is substantially impaired in the major life activity of caring for himself. He does not claim that he is substantially impaired in the major life activity of working.

The district court granted Schwan's motion for summary judgment, holding that Didier was not disabled within the meaning of the ADA. Because Didier admitted he could accomplish most daily living tasks with his left hand, the district court found that he was not "substantially" limited in the major life activity of caring for himself. The district court denied Didier's claims under both the ADA and the Arkansas Civil Rights Act, because the definition of disability under both acts was "in all relevant respects the same." Didier appeals, and Schwan's cross-appeals the district court's denial of its motion for bill of costs.

## II.    DISCUSSION

We review the district court's grant of summary judgment de novo and must affirm if, viewing the record in the light most favorable to Didier, there are no genuine issues of material fact and Schwan's is entitled to judgment as a matter of law. Logan v. Liberty Healthcare Corp., 416 F.3d 877, 880 (8th Cir. 2005), cert. denied, 126 S. Ct. 1780 (2006).

Where there is no direct evidence of discrimination, ADA claims are evaluated by the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). First, Didier must establish a prima facie case of discrimination: that he has an ADA-qualifying disability; that he is qualified to perform the essential functions of his position, with or without a reasonable accommodation; and he suffered an adverse action due to his disability. Kratzer v. Rockwell Collins, Inc., 398 F.3d 1040, 1044 (8th Cir. 2005). Once Didier makes a prima facie case, Schwan's must proffer a legitimate, nondiscriminatory reason for the adverse employment action. McDonnell Douglas, 411 U.S. at 802. If Schwan's produces such a reason, Didier must show that the reason given is a pretext for discrimination. Id. at 804. The district court held that Didier failed to establish a prima facie case, because he did not suffer from an ADA-qualifying disability.

-4-

Didier argues that he is substantially limited in the life activity of caring for himself because he has difficulty shaving, brushing his teeth, grooming, cleaning himself, wiping after going to the bathroom, feeding himself with a spoon, and dressing himself. He admits that he has learned to do most of these things with his left hand, but argues that because it takes him longer to do these things, he is substantially limited in this life activity. The district court noted that the medical evidence, including the FCE, indicated that while daily living activities were painful for Didier to do with his right hand, he could accomplish them with his left hand. Accordingly, the district court concluded that while Didier did have some medically imposed restrictions, he could not establish that his limitations were "substantial."

"[E]stablishing 'disability' is a significant hurdle that can prevent a person who was denied a job because of an impairment from being covered by the ADA." Nuzum v. Ozark Auto. Distribs., Inc., 432 F.3d 839, 842-43 (8th Cir. 2005). Under the ADA, a "disability" is "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual." 42 U.S.C. § 12102(2)(A). Determining whether an individual has a qualifying disability requires an individualized analysis of the claimed disability. Sutton v. United Air Lines, Inc., 527 U.S. 471, 483 (1999). "Major life activities under the ADA are basic activities that the average person can perform with little or no difficulty, including 'caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.'" Battle v. United Parcel Serv., Inc., 438 F.3d 856, 861 (8th Cir. 2006) (quoting 29 C.F.R. § 1630.2(i)). To be substantially limited in the major life activity of caring for himself, Didier must have an impairment that "'prevents or severely restricts' his ability to care for himself compared with how unimpaired individuals normally care for themselves in daily life." Fenney v. Dakota, Minn. & E.R.R. Co., 327 F.3d 707, 715 (8th Cir. 2003) (quoting Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 198 (2002)).

Didier cannot meet the rigorous <u>Toyota</u> standard, as set forth in our <u>Fenney</u> opinion. His broken right arm certainly does not "prevent" him from caring for himself, and we agree with the district court that his broken arm does not "severely restrict" him from caring for himself compared with how unimpaired individuals normally care for themselves. Nonetheless, Didier cites <u>Fjellestad v. Pizza Hut of America</u>, 188 F.3d 944 (8th Cir. 1999), and <u>Fenney</u> in support of his arguments. In <u>Fjellestad</u>, we held that there was a triable issue of fact whether an employee was substantially limited in the major life activity of *working*, but did not address claims that she was substantially limited in the life activity of caring for herself. <u>Id.</u> at 949. Therefore the holding in <u>Fjellestad</u> is completely distinguishable from Didier's situation.

<u>Fenney</u> is a closer call, however. In <u>Fenney</u>, we held that it was a triable issue whether the employee, who had lost his thumb and part of his middle finger in an accident, was substantially limited in the major life activity of caring for himself. 327 F.3d at 716. Fenney produced evidence from his doctor stating that it took him more time to change clothes. And, Fenney stated in deposition testimony that it took him twice as long as the average person to bathe, shave, prepare a meal, dress, and go to the bathroom. <u>Id.</u> at 715-16.

We think <u>Fenney</u> is also distinguishable. Fenney produced medical evidence and deposition testimony to support his claims regarding his limitations, and his employer produced no evidence to rebut this. <u>Id.</u> at 716. Didier relies on statements in his affidavit, submitted in opposition to Schwan's summary judgment motion. However, in Didier's affidavit, and in his deposition testimony, Didier essentially admits that he is not disabled. Though he has difficulty with shaving and other grooming activities, he learned to do these things left-handed. Didier can also dress himself, tie his shoes, write, dial the phone, wash dishes, and prepare meals with one or both hands. In <u>Fenney</u> we characterized the evidence defeating summary judgment

-6-

as "thin."  Id.  Here the evidence is *too* thin, and does not establish that Didier is prevented from or severely restricted in taking care of himself, compared to the unimpaired population.  See Bass v. SBC Commc'ns, Inc., 418 F.3d 870, 873-74 (8th Cir. 2005) (holding that plaintiff's opinions in an affidavit that he could have returned to work and performed the essential functions of his job was not sufficient evidence to survive summary judgment, and in fact were belied by his own deposition testimony).

Finally, we note that even if we were to find that Didier is disabled within the meaning of the ADA, the accommodation he requested–having another employee drive open routes or handle the truck doors–is not related to his claimed disability of being substantially limited in the life activity of caring for himself.  Nuzum, 432 F.3d at 848 (holding that there must be a nexus between the claimed disability and the requested accommodation).[4]  By way of contrast, in Fenney, the claimed disability was directly related to his requested accommodation.  Fenney worked for the railroad, and as part of his duties, he was subject to being called into work from home.  When called, he was required to report to duty within two hours.  The difficulty Fenney had in the major life activity of caring for himself and performing routine grooming tasks was directly related to his requested accommodation–being called sooner than the regular two hour time period.  Fenney, 327 F.3d at 710.

---

[4]Because we decide Didier's claim on the basis that he did not make his required initial showing of disability, we need not go through the "modified burden-shifting analysis" for accommodation cases discussed in Fenney.  327 F.3d at 712.  We simply explicate the fact that even if Didier had been able to create a triable issue for "disability," his claim would ultimately fail, as required by our reasoning in Nuzum.

## III. CONCLUSION

We commend Didier for having the fortitude to adapt to the effects of an unfortunate on-the-job injury, and to learn to do things with a broken arm and with his non-dominant left hand. However, we simply cannot find that his current limitations render him "disabled" within the meaning of the ADA. Therefore we affirm the district court. We also affirm the district court with regard to Schwan's bill-of-costs cross-appeal.

_____