# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3682

_____

| | | |
|---|---|---|
| Fredrick T. Kozisek, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the District |
| County of Seward, Nebraska; | * | of Nebraska. |
| Joe Ruzicka, individually and | * | |
| in his capacity as Chairman of | * | |
| the Seward County Board, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: June 9, 2008
Filed: August 27, 2008

_____

Before MELLOY, BEAM, and BENTON, Circuit Judges.

_____

BEAM, Circuit Judge.

Fredrick Kozisek appeals the district court's[1] grant of summary judgment in favor of Seward County and the chairman of the Seward County Board (collectively and hereinafter "county" or "board") in this employment discrimination and civil rights case. We affirm.

_____

[1]The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

## I.  BACKGROUND

Kozisek began working for the county in 1981 as a weed control officer.  In 1994, he applied for and was appointed to the multi-position of County Veterans Service Officer, Building and Grounds Supervisor, and General Assistance Administrator (collectively, "CVSO").  Kozisek and the board had a contentious history about the nature of the CVSO job.  He apparently wanted to devote more of his time and the county's resources to veterans' issues, and less to the other two positions.  Kozisek is a veteran himself, and served in the Vietnam war.  Kozisek has Post Traumatic Stress Disorder (PTSD) from his time in the war, and he testified that he took medication regularly to help control those symptoms.  However, it was not widely known that Kozisek suffered from PTSD, and Kozisek testified that he did not talk to anyone outside of his medical providers about it.

On July 22, 2005, Kozisek left work early and began drinking.  Later that evening, an intoxicated Kozisek wielded firearms, killed or wounded some of his family's farm animals (a pet racoon, ducks, a peacock, and a family dog), and threatened his wife.  Kozisek also had not taken his prescribed medications in the days preceding July 22.  Kozisek was arrested by the Seward County Sheriff the next morning for making terroristic threats, and for using a firearm to commit a felony.

Based on this incident, the board and Kozisek agreed that he would get a psychological evaluation and a substance abuse evaluation.  Kozisek first met with a mental health practitioner from the Veterans Administration (VA), Molly Nosbisch.  In a letter to the board, Nosbisch recommended that Kozisek complete inpatient alcohol treatment, and notified the board that she had arranged for him to be admitted to the Department of Veterans Affairs residential rehabilitation treatment center on August 18, 2005.  Kozisek did not want to complete inpatient treatment, however, and instead told the board that he would pursue treatment through the Blue Valley Mental

Health Center. The counselors at Blue Valley agreed that Kozisek needed to complete alcohol abuse treatment, but recommended outpatient treatment, in addition to suggesting that Kozisek get PTSD counseling, and attend Alcoholics Anonymous (AA) meetings.

The board decided to follow Nosbisch's recommendation and require Kozisek to complete inpatient treatment. The board mailed Kozisek a letter on August 31, 2005, informing him that he had ten days to enroll in an inpatient alcohol treatment center or lose his job. Kozisek refused. The board sent him another letter, dated September 20, 2005, noting that it had not received notification about his enrollment in an inpatient treatment program. This letter did not terminate his employment, but again threatened to do so, and invited him to a September 27, 2005, closed session meeting to discuss his continued employment with the county. Kozisek attended this meeting on September 27, and at that time argued with the board about whether he needed inpatient treatment. Following the meeting, the board memorialized the parties' discussions and conclusions in a letter, reiterating its mandate that Kozisek complete inpatient alcohol treatment. This time, the letter set a date of October 3, 2005, for Kozisek to provide proof that he enrolled in a program.

Instead, Kozisek returned to the VA medical center seeking an opinion from a doctor that he did not need inpatient alcohol treatment. Kozisek obtained such a letter from Dr. Padala and provided it to the board. Dr. Padala noted in his letter, dated September 28, 2005, that Kozisek had already "completed an outpatient program for substance abuse" at the Blue Valley facility. It is undisputed that Kozisek completed no such treatment. His "treatment" between July 22, 2005, and September 28, 2005, consisted of attending AA meetings. On October 4, the board notified Kozisek by letter that it was terminating his employment for his failure to "follow the treatment recommendations."

Kozisek brought the current action against the county under the Americans with Disability Act (ADA), asserting that he was disabled because of the PTSD, and that the county regarded him as a disabled alcoholic. He also raised claims under 42 U.S.C. § 1983 for violations of his First Amendment right to speak on matters of public concern about veterans' issues, and his due-process-protected property right in his continued employment with the county. The district court found that there was no evidence in the record that Kozisek's PTSD substantially impaired any of his major life activities. The district court presumed that Kozisek made a prima facie claim that the board regarded him as an alcoholic because his continued employment was conditioned upon him receiving inpatient alcohol abuse treatment. Nevertheless, the district court held that the county proffered a legitimate reason for Kozisek's dismissal–Kozisek's refusal of inpatient alcohol treatment. The district court also rejected Kozisek's constitutional claims and granted summary judgment in favor of the county.

## II. DISCUSSION

We review the district court's grant of summary judgment de novo. Brannon v. Luco Mop Co., 521 F.3d 843, 848 (8th Cir. 2008).

### A. ADA

To establish a prima facie case under the ADA, Kozisek must show that he was a disabled person within the meaning of the ADA, that he was qualified to perform the essential functions of the job, and that he suffered an adverse employment action under circumstances giving rise to an inference of unlawful discrimination. Miners v. Cargill Commc'ns, Inc., 113 F.3d 820, 823 (8th Cir. 1997). "[T]he ADA defines a disability as: (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an

impairment; or (C) being regarded as having such an impairment." Christensen v. Titan Distrib., Inc., 481 F.3d 1085, 1093 (8th Cir. 2007) (quotations omitted).

Once a plaintiff has made out a prima facie case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). The burden of production then shifts back to the plaintiff to demonstrate that the employer's proffered reason is a pretext for unlawful discrimination. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507-08 (1993).

Kozisek claims disability status based on two things: his PTSD and that the county regarded him as an alcoholic. We address the latter claim first. Kozisek asserts that the board regarded him as an alcoholic as evidenced by its requirement that he complete inpatient alcohol treatment as a condition of keeping his job. An employer regards the employee as disabled when "it mistakenly believe[s] that [the employee's] physical ailments substantially limit[] his ability to work." Chalfant v. Titan Distrib., Inc., 475 F.3d 982, 989 (8th Cir.), cert. denied, 128 S. Ct. 98 (2007). The "regarded as" provision was meant to combat "archaic attitudes, erroneous perceptions, and myths" working to the disadvantage of the disabled or perceived disabled. Brunko v. Mercy Hosp., 260 F.3d 939, 942 (8th Cir. 2001) (quotations omitted). Accordingly, "[i]f a restriction is based upon the recommendations of physicians, then it is not based upon myths or stereotypes about the disabled and does not establish a perception of disability." Breitkreutz v. Cambrex Charles City, Inc., 450 F.3d 780, 784 (8th Cir. 2006).

Although not cited by either of the parties, we fail to see how Breitkreutz is not fatal to Kozisek's "regarded as" prima facie case. The board's insistence upon Kozisek completing inpatient alcohol treatment was not based upon misconceptions, myths or stereotypes about his possible drinking problem. Rather, it was based upon, first, a very serious incident which resulted in criminal charges against Kozisek, and then

most importantly, a licensed mental health therapist's recommendation that Kozisek complete inpatient alcohol treatment. That Kozisek was able, two months later, to manipulate[2] a physician from the VA into providing a letter opining that outpatient treatment would be sufficient does not matter. The fact remains that the county based its decision about Kozisek's "restriction"–complete inpatient treatment before returning to his important public job of assisting veterans–upon the recommendation of a professional substance abuse counselor.

These facts amply distinguish Kozisek's case from Miners, which he principally relies upon. In Miners, where Cargill fired an employee (Miners) who refused to attend a chemical dependency treatment program, we reversed the grant of summary judgment in favor of the employer. Miners worked for a radio station and was required to sponsor and attend promotions that took place in bars and restaurants. Through a private investigator, Cargill obtained evidence that Miners had consumed alcohol at these events and then later drove the company car, contrary to company policy. The company informed her that she could either complete a chemical dependency treatment program or be fired. Miners had not been arrested for DUI or had any other encounters with law enforcement regarding her alcohol use. Nor had she been evaluated by a professional substance abuse counselor who recommended treatment. Miners chose not to enter treatment, was fired, and brought an ADA claim, arguing that her employer regarded her as an alcoholic. We reversed summary judgment for the employer, holding that Cargill did regard her as an alcoholic, and absent some evidence that Miners was an alcoholic, Cargill could not argue that it attempted to accommodate her or had a basis for terminating her for refusing treatment. Miners, 113 F.3d at 825.

---

[2]It is uncontested that Kozisek was not interviewed or examined by Dr. Padala on September 28, 2005. Dr. Padala simply met him in the hallway and provided the requested "recommendation." It is also uncontested that Dr. Padala's letter contains erroneous factual underpinnings–that Kozisek had already completed outpatient alcohol treatment.

Here, there is evidence that Kozisek needed professional intervention for his drinking. Kozisek admitted that he regularly attended AA meetings after the July 2005 incident. The counselors at Blue Valley Mental Health recommended that he complete outpatient treatment. And at least one counselor at the VA recommended that he complete inpatient treatment. The board's insistence that he fulfill this latter recommendation before returning to his CVSO job does not violate the ADA's prohibitions on regarding employees as disabled. Kozisek's regarded as claim fails.

Kozisek also asserts disability discrimination based upon his PTSD. As noted above, the district court found that there was no evidence in the record that Kozisek's PTSD substantially impaired any of his major life activities. Kozisek now argues that it affects his major life activity of thinking. No one seems to dispute that Kozisek has PTSD, and accordingly, we will assume he can make out a prima facie case on this claim. Nevertheless, we find that the board articulated a legitimate, non-discriminatory reason for firing him–because he would not complete inpatient alcohol treatment. Further buttressing the county's claims that this, and not Kozisek's PTSD, is the real reason that he was fired, is the fact that there is no evidence the county knew of his PTSD condition. Kozisek testified that he was careful to keep the condition to himself. It is axiomatic that the county must have known about his condition before it can be liable for discriminating against him because of that condition. Although there was some evidence that Kozisek had told members of the veterans service committee about PTSD symptoms when he first applied for the job in 1994,[3] there is no evidence that anyone on that committee was a member of the board in 2005. And there is no evidence that the county took action against Kozisek based upon his PTSD. The record is fairly clear that the county fired Kozisek because he would not complete inpatient alcohol treatment, and conversely, would have retained him if he had completed such treatment. Any arguments that this reason was

[3]Kozisek also testified that he had not yet been officially diagnosed with PTSD when he interviewed for the CVSO position in 1994.

-7-

pretextual are not persuasive. Accordingly, the PTSD claim fails, and we affirm the district court's grant of summary judgment on Kozisek's ADA claim.

### B.    First Amendment

A public employee alleging a violation of the right to free speech must show that the speech in question is entitled to the protections of the First Amendment because it addresses a matter of public concern. Buazard v. Meridith, 172 F.3d 546, 548 (8th Cir. 1999). Whether an employee's speech addresses a matter of public concern is determined by the content, form, and context of the speech, and that speech must relate to some matter of political, social or other community concern. Connick v. Myers, 461 U.S. 138, 146-48 (1983). Although the First Amendment protects some expressions related to the speaker's job, it does not protect expressions made as part of the employee's job duties. Garcetti v. Ceballos, 126 S. Ct. 1951, 1959-60 (2006).

Kozisek claims that he engaged in protected speech when he asked the board for more money for veterans' issues, and when he requested that the CVSO position be made full-time. These communications to the board were made pursuant to his duties as CVSO and were not protected speech. Id. at 1960. And, even assuming that the speech had protected status, there is no link between Kozisek's speech and his termination. He was actually successful in his request to spend more time on veterans' issues, as his position was made a full-time veterans' position approximately one year prior to the time he was fired. Accordingly, this claim fails.

### C.    Due Process

To survive summary judgment on his procedural due process claim, Kozisek must provide evidence that he had a property interest–a reasonable and legitimate expectation of continued employment. Howard v. Columbia Pub. Sch. Dist., 363 F.3d 797, 803 (8th Cir. 2004). Whether he had a constitutionally protected property

interest in his job is dependent upon Nebraska law and the terms of his employment. Id. Kozisek argues that he had a protected property interest in the CVSO position by virtue of Nebraska Revised Statute §§ 23-2001 to 23-2009, which provide for the removal of county officers through judicial proceedings. However, Kozisek was not a "county officer" within the meaning of these statutes, because the statutory terms indicate that they only apply to *elected* county officials, and Kozisek was not elected, but appointed. He also cites the statutes dealing with the veterans service committee and the committee's authorization to hire a full or part-time CVSO. Neb. Rev. Stat. §§ 80-407, 80-408. We fail to discern how these statutes create a due-process-protected property right in the position, as there is no mandate concerning the length of the CVSO's appointment or a proscription on the county's ability to terminate this position. See Heinzman v. County of Hall, 328 N.W.2d 764, 768 (Neb. 1983) (noting that absent legislation, government employees in Nebraska are at-will employees and finding that employee's "bare allegation of a 'property right'" to continued employment was insufficient to establish a right to notice and a hearing).

Further, there is evidence that Kozisek considered himself an at-will employee as stated in the employee handbook. He testified that he felt he could leave at any time, and admitted that he did not think he was entitled to the CVSO job for any set period of time. Finally, even assuming that Kozisek did have a property right in his CVSO position, he received all process due. The board gave him notice by way of the three letters he received–all of which outlined the steps Kozisek needed to take to retain his job. Kozisek was also given the opportunity to be heard at the September 27, 2005, meeting he attended with the board. These actions constituted adequate due process. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546 (1985) ("The essential requirements of due process . . . are notice and an opportunity to respond."). Kozisek's due process claim fails.

## III.   CONCLUSION

We affirm the district court

_____